In re LIL' THINGS, INC., Debtor.

Andrews & Kurth, L.L.P., Appellant.

Civ. No. 3:99–CV–2545–H.
Bankruptcy No. 397–35356–HCA–11.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 13, 2000.

## MEMORANDUM OPINION
## AND ORDER

SANDERS, Senior District Judge.

Before the Court is Andrews & Kurth's ("A & K") Appeal Under 28 U.S.C. § 158(a) From a Final Judgment of a Bankruptcy Judge, filed August 5, 1999, and its supporting Brief, filed December 8, 1999.

### I. Background

This case arises from the bankruptcy of LiL Things, Inc. ("Debtor"), a retail chain of toy superstores. Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on June 10, 1997, and thereafter continued to operate for a period of time as a debtor-in-possession ("DIP") pursuant to §§ 1107 and 1108 of the Bankruptcy Code. On or about June 11, 1997, Debtor filed its Application for Authority to Employ Appellant Andrews & Kurth as Counsel to the Debtor, which was approved by the Bankruptcy Court on June 16, 1997.

During the pendency of the bankruptcy, the Bankruptcy Court entered an Interim DIP Order, filed June 11, 1997, and a Final DIP Order, filed June 30, 1997, (collectively referred to as the "DIP Orders"), governing, among other things, Debtor's use of pre-petition cash collateral, the availability of post-petition borrowing, and approving the Debtor's DIP Loan and Security Agreement. Those DIP Orders also established a carve-out of $500,000.00 for professional fees (the "Carve Out"), and gave the Carve–Out super-priority status over other administrative claims and the claims of the DIP secured lender. Interim DIP Order, pg. 8; and Final DIP Order, pg. 7.

The DIP Orders established that, in the event of a default by Debtor and subsequent liquidation of collateral, A & K, as Escrow Agent, was to receive 50% of all proceeds from collateral liquidation until the Carve Out maximum of $500,000.00 was reached. The remaining 50% was to go directly to the DIP secured lender, and after the Carve Out was fully funded 100% of the collateral liquidation proceeds would be paid to the DIP secured lender until its lien was fully satisfied.

Efforts to reorganize Debtor were unsuccessful, and on November 27, 1997, the Bankruptcy Court entered an Order authorizing Debtor to retain a professional liquidator to sell Debtor's inventory. This sale resulted in lump sum proceeds that exceeded the total amount due to the DIP secured lender plus the maximum amount of $500,000.00 set aside in the Carve Out for professional fees. The DIP lender was paid in full and released its claim. The remaining proceeds, including the $500,000.00 earmarked to fund the Carve Out, were retained by Debtor.

According to the Carve Out, A & K, as Escrow Agent, should have been paid the full $500,000.00 directly by the professional liquidator. Instead, A & K deferred receipt of the Carve Out funds and allowed Debtor to retain them, though at all times the Carve Out funds were segregated in its accounting. This allowed Debtor to earn interest on the Carve Out funds, thereby accruing additional resources to pay other creditors.

On August 24, 1998, the Bankruptcy Court issued an Order (hereinafter the "Fee Order") providing for all professional fees to be settled on a *pro rata* basis with all other administrative creditors.[1] A & K filed a Motion for Reconsideration of the Bankruptcy Court's Order, which was denied in an Order filed July 26, 1999 (hereinafter the "Reconsideration Order") A &

---

1. The Order also addressed the payment priority of certain tax obligations, which need not be addressed here.

K appeals the Bankruptcy Court's ruling that the Carve Out was not effectuated, and all professional fees were to be paid *pro rata* with all other administrative claims.

## II. Standard of Review

 This Court functions as an appellate court in appeals of Bankruptcy Court decisions. 28 U.S.C. § 158(a), (c). The Court may not, however, make independent factual findings and is not to set aside the Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankr. Rule 7052, 8013; *Sequa Corp. v. Christopher*, 28 F.3d 512, 514 (5th Cir.1994); *Wright v. United States (In re Placid Oil Co.)*, 158 B.R. 404, 412 (N.D.Tex.1993). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 434 (5th Cir.1994). The Bankruptcy Court's conclusions of law are subject to a *de novo* standard of review. *Sequa*, 28 F.3d at 514; *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 288 (5th Cir. 1994).

## III. Analysis

The Bankruptcy Court, in its Reconsideration Order, acknowledged that carve outs for attorney fees are "a normal and enforceable provision in a cash collateral stipulation." Reconsideration Order, pg. 1 (citing *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Associates, L.P.)*, 153 F.3d 61 (2nd Cir.1998)). The Bankruptcy Court did not question, in its Fee Order or its Reconsideration Order, the validity of the Carve Out provision. Instead, it found that "in order to be paid from the cash

collateral carve out, all terms and/or restrictions of the cash collateral stipulation must be met. Such restrictions were not met here[.]" Reconsideration Order, pg. 2.[2] Because A & K challenges that factual finding, the Bankruptcy Court's ruling will be reviewed for clear error.

 Although the Carve Out funds were held by the Debtor instead of paid directly to A & K, this was not a material breach of the Carve Out provisions. Indeed, it resulted in an accrual of interest that benefitted the other administrative vendors by increasing the funds available for disbursement. In any event, it was not this issue that concerned the Bankruptcy Court.

 In its finding that the Carve Out provisions were not met, the Bankruptcy Court found that the funds at issue were to be carved out of the proceeds paid to the DIP secured lender. *Transcript*, pp. 17–18. The Court finds this to be a misinterpretation of the carve out provision, and clearly erroneous, as the Carve Out definition contained in the DIP Orders clearly states the funds were to be carved out of *all* the collateral liquidation proceeds, not just those proceeds allocated to a secured creditor.

The Lender (or such other person charged with selling or otherwise disposing of the Collateral) shall deliver to Andrews & Kurth L.L.P. (the "Escrow Agent") in trust for the benefit of all professionals (the "Professionals") employed at the expense of the Debtor's estate in the course of this Bankruptcy Court, Fifty Percent (50%) *of the proceeds (net of the Lender's expenses) of the sale or other disposition of the Collateral* until such time as the Escrow Agent has received the Carve Out (de-

---

2. In a hearing held July 23, 1998, the Bankruptcy Court expressed deep-seated concern about paying any professional fees at 100%, while other administrative creditors were only paid a fractional portion of their investment. *See Transcript of Proceedings ("Tran-*

*script")*, BK No. 397–35356–HCA–11, July 23, 1998, pp. 29–44. However, at that point the Carve Out was already established by the DIP Orders. The only issue to be resolved was whether its terms and restrictions were met.

fined below). *Interim Order*, June 16, 1997, ¶ 12(a) (emphasis applied).

In this case, the liquidation professional, after deducting the expenses of the liquidation, forwarded sufficient proceeds to fully discharge the DIP secured lender, to fully fund the Carve Out, and to pay the other administrative creditors a fractional return on their investments. Contrary to the conclusion of the Bankruptcy Court, this fulfilled the terms and restrictions of the Carve Out set forth in the DIP Orders.

Although not a part of the Court's legal reasoning, two considerations further justify affirming the Carve Out. First, while none of the other administrative creditors will receive 100% of the money owed them, there is substantial evidence that the efforts of the various professionals, subsequent to Debtor's bankruptcy petition filing, raised the return those administrative creditors will receive by about 46%, from approximately 37 cents on the dollar to approximately 54 cents. *Transcript*, pp. 40–42.

Second, at the request of the Court, A & K polled the administrative creditors that would be adversely impacted by effectuating the Carve Out. In a Certificate of Non–Objection to Appeal, filed January 5, 2000, A & K affirmed that no administrative creditor objected.

### IV. *Conclusion*

The Bankruptcy Court, in its DIP Orders, established a Carve Out to fully fund, up to a maximum of $500,000.00, professional fees related to administering Debtor's bankruptcy. All fees *exceeding* that maximum were to be paid *pro rata* with all other administrative creditors.

The Bankruptcy Court's finding of fact that the money to fund the provision was to be carved out of only those collateral liquidation proceeds allocated to the DIP secured lender does not comport with the Carve Out's definition contained in the DIP Orders. The Court finds that the Carve Out's terms and restrictions were fully satisfied, the Carve Out was effectuated, and the Order issued by the Bankruptcy Court holding otherwise was clearly erroneous. Accordingly, the Order of the Bankruptcy Court is **REVERSED** and this matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this ruling.

SO ORDERED.