United States Court of Appeals,

Fifth Circuit.

No. 93-2187.

In the Matter of Clayton Wray STONE, Jr. and Jeannine Stone, Debtors.

Clayton Wray STONE, Jr. and Wife, Jeannine Stone, Appellants,

v.

Melvin CAPLAN, et al., Appellees.

Jan. 3, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, WIENER, and DeMOSS, Circuit Judges.

JOHNSON, Circuit Judge:

This is a no-asset bankruptcy case. Clayton and Jeannine Stone filed a voluntary petition for relief in October of 1987; however, they inadvertently omitted several creditors from their section 521(1)[1] schedules. Although the Stones amended the schedules to include those creditors prior to the final discharge of the case, the bankruptcy court ruled that the debt was nondischargeable under section 523(a)(3) of the Bankruptcy Code. The Stones appealed; the district court affirmed; this Court reverses.

## I. Facts and Procedural History

In October of 1980, Plaintiffs Solly Hemus, Ronald Fash and his wife, Leah, together with Defendants Clayton and Jeannine Stone, purchased a condominium from Plaintiffs Melvin and Carole Caplan. Almost five years after this transaction, Mr. Hemus and the Fashes sold their interests in the condominium to the Stones and Ernie Beltz, a business partner of Clayton Stone.[2] Soon after this sale, the Stones began to experience substantial financial difficulties. They filed a voluntary petition

---

[1]The statutory provisions discussed herein are found in Title 11 of the United States Code.

[2]The grantees—the Stones and Mr. Beltz—were to make monthly payments to the mortgagee, Colonial Investment Corporation, on behalf of the grantors—the Fashes and Mr. Hemus.

for bankruptcy on October 16, 1987.[3]  However, failing to recognize their obligation to the Plaintiffs [hereinafter referred to as "Caplans"], the Stones neglected to list the Caplans as creditors, as required by section 521(1) of the Bankruptcy Code.

The Caplans first learned of the Stones' bankruptcy proceedings in March of 1989, approximately one year after the deadline for filing proofs of claims.[4]  In April of 1991, the Caplans filed a complaint in the bankruptcy court, alleging that the Stones were indebted to them.  The Caplans requested that the court deem the debt in question nondischargeable under section 523(a)(3)(A).  The Stones responded by amending their schedules to include the Caplans as creditors.  In the interim, the bankruptcy trustee filed a no-asset report, declaring that the estate contained no property for distribution.[5]

During a trial on the merits before the bankruptcy court, the parties stipulated that the Caplans' sole dischargeability claim was based upon the failure-to-list provision enumerated in section 523(a)(3)(A).  The Caplans also conceded that the debtors had not engaged in fraud or intentional design in their failure to list the debt.  Nevertheless, believing that the Fifth Circuit had not addressed this issue, the bankruptcy court strictly construed section 523(a)(3)(A) and ruled that the debt owed to the Caplans was nondischargeable.  The district court, reviewing the case on appeal, affirmed.  The Stones appeal.

## II. Discussion

*A. Standard of Review*

The standard of review in bankruptcy cases is no different from the standard of review in other civil cases.  This Court will not set aside a bankruptcy court's findings of fact unless they are clearly erroneous.  Bankr.R. 8013; *In re Missionary Baptist Foundation, Inc. (Wilson v. Huffman),*

---

[3]The Stones did not originally claim that this was a no-asset case.

[4]The court scheduled the creditors' meeting for December 14, 1987;  therefore, February 2, 1988, was the last date on which creditors could file complaints as to dischargeability under § 523(c) and objections to discharge in general.  March 12, 1988, marked the deadline for filing proofs of claims.

[5]Additionally, the Caplans deposed Mr. and Mrs. Stone in a Rule 2004 examination and reviewed documents and things related to the Stones' indebtedness.

712 F.2d 206, 209 (5th Cir.1983). However, the primary issue in this case—the proper construction and application of section 523(a)(3)(A)—is a question of law which we review *de novo. In re Herby's Foods, Inc.,* 2 F.3d 128, 130 (5th Cir.1993).

*B. History of 11 U.S.C. § 523(a)(3)(A)*

Section 523(a)(3)(A) of the Bankruptcy Code penalizes a debtor for failing to list all of his creditors and debt on applicable schedules. The statute provides that a debt may not be discharged if it was "neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing ..." 11 U.S.C. § 523(a)(3)(A). Section 17(a)(3), the predecessor to section 523(a)(3)(A), similarly provided that unscheduled debts were not dischargeable. The provision read as follows:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.

Section 17(a)(3), Bankruptcy Act, *codified at* 11 U.S.C. § 35(a)(3) (repealed by the Bankruptcy Reform Act of 1978) (*as quoted in In re Adams,* 734 F.2d 1094, 1098 (5th Cir.1984)).

The Supreme Court construed this failure-to-list provision quite strictly in *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904). There, the debtor, Mr. Birkett, filed a voluntary petition for bankruptcy and failed to include one of his creditors, Columbia Bank, on his schedules. Unlike this case, however, Columbia Bank first learned of the bankruptcy proceedings almost two months *after* the discharge of the case. Mr. Birkett contended that section 17(a) was inapplicable since his failure to list Columbia Bank was due to inadvertence and since Columbia Bank learned of the bankruptcy proceeding in time to protect its rights.

The Supreme Court rejected both arguments. As to the former contention, the Court ruled that a debtor's neglect or inadvertence is irrelevant and cannot preclude the discharge of unscheduled debt. *Id.* at 351, 25 S.Ct. at 44. As to the latter argument, the Supreme Court determined that Columbia Bank did not have actual knowledge of the bankruptcy action. The Court ruled that actual knowledge "is a knowledge in time to avail a creditor of the benefits of the law,—in time to give him

an equal opportunity with other creditors ..." *Id.* The debt in question was therefore deemed nondischargeable under section 17(a)(3) of the Bankruptcy Act.

Almost forty years later, the Second Circuit, following the Supreme Court's guidance in *Birkett,* held that section 17(a)(3) contained no exceptions. *Milando v. Perrone,* 157 F.2d 1002, 1004 (2d Cir.1946). In the *Milando* court's view, the failure-to-list provision forbade the discharge of unlisted debt even if the creditor learned of the bankruptcy proceeding in time to participate in the distribution of dividends. *Id.*

This Court construed the law quite differently in *Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964). Focussing upon the equitable powers of the bankruptcy court, this Court rejected other decisions which had held that debtors were absolutely barred from amending their schedules after the proof-of-claim period.[6] *Id.* at 549. Unlike *Birkett* and *Milando,* the *Robinson* Court determined that out-of-time amendments would be allowed—but only if exceptional circumstances and equity so required. *Id.* at 550.

*C. Construing Section 523(a)(3)(A)*

In 1977, Congress set out to reform the Bankruptcy Act. It found contradictory interpretations of the failure-to-list provision: *Birkett* focussed upon the plain language of the statute, and *Robinson* focussed upon the equitable principles of bankruptcy law. Faced with this conflict, Congress rewrote the provision.[7] This case calls on the Court to properly construe that provision.

Indisputably, the goal of statutory construction is to ascertain legislative intent through the plain language of a statute—without looking to legislative history or other extraneous sources. *Caminetti v. United States,* 242 U.S. 470, 490, 37 S.Ct. 192, 195, 61 L.Ed. 442 (1917). The Court may not look beyond the words of a statute if those words are rational and unambiguous. *In re*

---

[6]Amending the schedules resolved the failure-to-list problems. *See* 8 COLLIER ON BANKRUPTCY ¶ 5010.06 (15th ed. 1991).

[7]Section 17(a)(3) of the Bankruptcy Act became codified at section 523(a)(3) of the Bankruptcy Code. The failure-to-list statute now forbids the discharge of debt which was "neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim, unless [the] creditor had notice or actual knowledge of the case in time for ... timely filing." 11 U.S.C. § 523(a)(3)(A).

*Hammers,* 988 F.2d 32, 34 (5th Cir.1993).

Though the words in section 523(a)(3)(A) are rational, they are not unambiguous. The parties and the bankruptcy court proffered three distinct interpretations of the failure-to-list statute.[8] The Caplans, citing *In re Reese,* 133 B.R. 245 (Bankr.M.D.Fla.1991), contend that the provision refers to Bankruptcy Rule 4007(c). Rule 4007(c) requires creditors to file dischargeability complaints which are based upon section 523(c) no later than sixty days after the first date set for the creditors' meeting. BANKR.R. 4007(c). In the Caplans' view, therefore, to escape the consequences of section 523(a)(3)(A), debtors must schedule all debts prior to the expiration of those sixty days.[9]

The bankruptcy court's conclusion and the Stones' interpretation, though inconsistent, are far more persuasive. The court determined that the word "timely," in the phrase "timely filing of a proof of claim" in section 523(a)(3)(A), refers to Bankruptcy Rule 3002(c). This rule requires creditors to file their proofs of claims within ninety days following the first date set for the creditors' meeting. BANKR.R. 3002(c). The Stones, on the other hand, argue that in a no-asset case, no definitive deadline exists since creditors are not required to file proofs of claims unless and until assets are discovered.[10] BANKR.R. 3002(c)(5).

With so many possible interpretations of the provision in question, one thing seems altogether clear: The words of the section 523(a)(3)(A) are anything *but* clear and unambiguous. Congress is presumed to have known of the conflicting interpretations in *Birkett* and *Robinson,* and it apparently

---

[8]COLLIER ON BANKRUPTCY provides yet another exegesis of this statute. The treatise explains that amending schedules in no-asset cases—as occurred here—" "cure[s]' the section 523(a)(3)(A) dischargeability problem where the only issue is negligent failure to schedule." 8 COLLIER ON BANKRUPTCY ¶ 5010.06 (15th ed. 1991).

[9]Their contention is not at all persuasive here. The Caplans based their dischargeability claim on § *523(a)(3)(A),* not § *523(c),* and those rules, by their clear terms, are mutually exclusive. *Compare* 11 U.S.C. § 523(a)(3)(A) *with* 11 U.S.C. § 523(c); *see also* BANKR.R. 4007(b) (explaining that all complaints which are *not* based upon § 523(c) may be filed at any time, even after the final discharge of the case).

[10]The Courts of Appeals for the Sixth and Seventh Circuits have construed § 523(a)(3)(A) quite similarly. *See In re Rosinski,* 759 F.2d 539, 542 (6th Cir.1985); *In re Stark,* 717 F.2d 322, 324 (7th Cir.1983). The Sixth Circuit has further ruled that the extended filing date allowed under Rule 3002(c)(5) is available even if the creditor did not receive Rule 2002(e) notice that the debtors possessed no assets. *Rosinski,* 759 F.2d at 542.

revised the statute to affirm one and overrule the other. *See Shapiro v. United States,* 335 U.S. 1, 16, 68 S.Ct. 1375, 1383, 92 L.Ed. 1787 (1948) (stati ng that Congress is presumed to know the construction courts have given a statute prior to the congressional modification of that statute); *In re Hill (Zielinski v. Hill),* 972 F.2d 116, 120 (5th Cir.1992) (same). However, discovering which interpretation Congress approved, unaided by extraneous sources, would be no more than a guessing game here. We therefore turn to the legislative history accompanying the 1978 Bankruptcy Reform Act for assistance.

Looking at section 523(a)(3) through the lenses of that legislative history brings the legislative intent into distinct focus. As revealed by House and Senate Judiciary Committee reports on the 1978 Bankruptcy Reform Act, Congress' sole purpose in revising the failure-to-list provision was to validate the liberal, *Robinson*-type approach and to overrule *Birkett,* which strictly construed section 17(a)(3). Both House and Senate reports explicated that under section 523(a)(3), "debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor *to protect his rights ...*" S.REP. No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5864 (emphasis added); H.R.REP. No. 595, 95th Cong., 2d Sess. (1977), 1978 U.S.S.C.A.N. 5963, 6320 (emphasis added). The House Judiciary Committee expounded with greater specificity: "Section 523(a)(3) of the House amendment is derived from the Senate Amendment. *The provision is intended to overrule Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904)." H.R.REP. No. 595, 95th Cong., 2d Sess. (1977), 1978 U.S.S.C.A.N. 5963 (emphasis added).

It seems clear to this Court that this legislative history validates our *Robinson* decision. We therefore hold that section 523(a)(3) must be construed with an eye toward the equitable principles which underlie bankruptcy law:[11] The statute must be applied consistently with the guidance set forth in *Robinson v. Mann.*

---

[11]The Ninth Circuit is the only Court of Appeals which has approved of the strict construction of § 523(a)(3). However, it did so without opinion and stated that its decision was relevant only for law of the case, res judicata, and collateral estoppel purposes. *In re Laczko,* 722 F.2d 912 (1985). All other Courts of Appeals which have addressed the issue have construed the statute as we do. *See In re Soult,* 894 F.2d 815, 817 (6th Cir.1990); *In re Baitcher,* 781 F.2d 1529, 1534 (11th Cir.1986); *In re Rosinski,* 759 F.2d 539, 542 (6th Cir.1985); *In re Stark,* 717 F.2d 322, 324 (7th Cir.1983).

*D. Robinson and the Stones*

The *Robinson* Court outlined three factors which courts must consider in determining whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt. Courts must examine 1) the reasons the debtor failed to list the creditor, 2) the amount of disruption which would likely occur, and 3) any prejudice suffered by the listed creditors and the unlisted creditor in question. Although the bankruptcy court strictly construed the failure-to-list provision, that court made findings of fact which permit this Court to review the case *sub judice* in light of the three *Robinson* factors.[12]

*1. Reasons For The Failure To File*

As our distinguished colleagues in the Sixth, Seventh, and Eleventh Circuits have determined, a court should not discharge a debt under section 523(a)(3) if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive. *Soult,* 894 F.2d at 817; *Baitcher,* 781 F.2d at 1534; *Rosinski,* 759 F.2d at 541; *Stark,* 717 F.2d at 323-34. If the failure is attributable solely to negligence or inadvertence, however, equity points toward discharge of the debt.

In this case, the parties stipulated—and the bankruptcy court found—that the Stones' failure to list the Caplans on the section 521(1) schedules was completely due to mistake or inadvertence. In fact, the bankruptcy court specifically found that no evidence whatever demonstrated that the Stones had fraudulently or intentionally failed to list the Caplans as creditors. Hence, the first factor supports discharge.

*2. Disruption To The Courts*

The second factor focusses on undue disruption to courts' dockets. While bankruptcy courts will certainly experience some disruption by allowing debtors to amend their schedules and creditors to submit proofs of claims outside the Rule 3002(c) time period, such disruption is not so inordinate as to tip the scales against discharging the debt.[13] Here, the Caplans have not suggested even one

---

[12]Neither party has intimated, let alone argued, that the bankruptcy court's findings were clearly erroneous. In fact, the parties stipulated that most of those findings were correct.

[13]As demonstrated in *Robinson,* bankruptcy courts may need to reopen cases pursuant to Bankruptcy Rule 5010, in order to allow debtors to amend their schedules. BANKR.R. 5010; *see*

way in which the discharge can or will unduly disrupt the courts, and this Court finds that no such disruption would occur. Therefore, the second factor likewise favors discharge.

*3. Prejudice to Creditors*

Without question, the third factor, which focusses on prejudice to the creditors—in conjunction with the first factor—is the most critical.[14] Creditors are prejudiced only if their rights to receive their share of dividends and obtain dischargeability determinations are compromised. *Soult,* 894 F.2d at 817; *Rosinski,* 759 F.2d at 542; *see also In re Haga (Haga v. National Union Fire Insurance Company),* 131 B.R. 320, 326 (Bankr.W.D.Tex.1991) (stating that "Congress apparently only considered [the omitted creditor's rights to share in any distribution and obtain a determination of dischargeability] as being material because only the inability to timely file a proof of claim and a dischargeability action are sufficient grounds under the Code to penalize the debtor" (citing *In re Anderson,* 72 B.R. 783, 786 (Bankr.D.Minn.1987))).

No creditor has been or will be prejudiced here. The Caplans, themselves, point to no prejudice they would experience if the debt were discharged, and they cannot so do: Because this is a no-asset case, no creditor will receive any dividends. Indeed, the Caplans' rights to participate in dividends would not be any different had they been listed *first* on the Stones' schedules.

Further, the Caplans have stipulated that their only dischargeability claim arises from the failure-to-list statute. There is no question but that the Caplans have had full opportunity to develop,

---

*also Soult,* 894 F.2d at 817; 8 COLLIER ON BANKRUPTCY ¶ 5010.06 (15th ed. 1991). Indubitably, bankruptcy courts will have to review the facts of each case in light of *Robinson* to determine whether § 523(a)(3)(A) is applicable. Such disruption is to be expected. It does not portend against discharging the debt.

> On the other hand, if no proof-of-claim deadline has ever been set, § 523(a)(3)(A), by its own terms, is inapplicable. Bankruptcy courts obviously need not review such cases in light of *Robinson. In re Bulbin (Gordon v. Bulbin),* 122 B.R. 161, 161 (Bankr.D.D.C.1990); *In re Hunter,* 116 B.R. 3, 4 (Bankr.D.D.C.1990).

[14]The Sixth and Seventh Circuits focus solely on those two factors. The Sixth Circuit explained in *Rosinski* that section 523(a)(3) applies "only if [the] failure to include the creditor on the original schedule can be shown to have prejudiced him in some way or to have been part of a scheme of fraud or intentional design." 759 F.2d at 541; *see also Soult,* 894 F.2d at 817 (determining that bankruptcy courts may reopen cases so as to allow amendment of schedules and discharge of debt if the "failure to schedule a debt was simply inadvertent and did not prejudice the creditor in any way").

brief, and argue that claim before this Court, the district court, and the bankruptcy court. Hence, the Caplans' right to have their dischargeability claim decided has not been compromised in any way. Additionally, the parties have not suggested—and we cannot fathom—any way that a *listed* creditor's right to a dischargeability decision could be prejudiced here. Thus, the third factor, like the first and second factors, favors discharge.

Applying the *Robinson* factors to the case *sub judice* leads to the inescapable conclusion that the bankruptcy court erred in holding that the Stones' debt to the Caplans was nondischargeable. Because the Stones' failure to list the Caplans as creditors was solely due to mistake or inadvertence and because the Caplans were scheduled in time to protect their rights, section 523(a)(3)(A) is inapplicable here.

### III. Conclusion

Because section 523(a)(3)(A) is inapplicable in the case *sub judice,* the Stones' debt to the Caplans is dischargeable. The bankruptcy court erred in ruling otherwise. This Court therefore is compelled to REVERSE.