**In re Randall Todd NIELSEN; In re Jerri Lea Nielsen, Debtors,**

**Sharon White, Plaintiff–Appellant,**

**v.**

**Randall Todd Nielsen; Jerri Lea Nielsen, Defendants– Appellees.**

**No. 02–35983.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Filed Sept. 7, 2004.

---

James A. Nelson, Toledo, WA, for the appellant.

Randall T. Nielsen, pro per, Winlock, WA, appellee.

Before KLEINFELD, GOULD, and TALLMAN, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a bankruptcy appeal involving a no-assets Chapter 7 bankruptcy. The issue turns on the effect of a debtor's failure to properly list a creditor on the bankruptcy court's mailing list.

## Facts

Randall Nielsen ran a TV repair and satellite television business and needed a loan. Sharon White was his customer. She helped him get his loan by pledging her own certificate of deposit as security. He failed to pay the loan, and the bank took Ms. White's money. Nielsen agreed to pay her back with interest, but he did not come up with the money. He and his wife later filed for bankruptcy under Chapter 7.

The Nielsens had no non-exempt property, and the appointed trustee accordingly decided that there were no assets to distribute to creditors. In accord with what is commonly done in no-assets Chapter 7 bankruptcies, no date was set as a deadline for creditors' claims, since there were no assets to claim. The bankruptcy court granted the Nielsens a discharge.

Ms. White never received notice of the bankruptcy proceeding until it was over, even though the debt to her was the Nielsens' largest unsecured debt. After the discharge, she again dunned Nielsen, and he told her that his debts, including what he owed her, had been discharged in bankruptcy. She sued him and his wife in the United States Bankruptcy Court for the Western District of Washington seeking revocation of the discharge on the ground that it had been procured by fraud.[1]

Ms. White's fraud theory was that Nielsen had purposely caused her not to get notice. Nielsen had listed her on his "Schedule F," the list of unsecured creditors. But that is not what the bankruptcy court uses to notify creditors of the proceedings. For that purpose, the bankrupt files a "matrix," a separate mailing list that the bankruptcy court scans into its database. We infer from the record that optical character recognition software is used to convert the mailing list into a database program that can print mailing labels, and that the scanning software works much better on typing than hand-printing. Nielsen put Ms. White's name on this list, but he hand-printed it in. The scanner did not pick it up, so notice was never mailed to Ms. White.

Ms. White's theory was that Nielsen must have checked out the file after the form was scanned. He then purposely printed her name onto the mailing list too late for her to be among those to whom notice would be mailed. Nielsen testified that he got to the court before it opened, looked over his papers while waiting in the lobby, and noticed that he had omitted Ms. White's name and address on the mailing list. Before filing his papers, he printed her name and address in pen. He testified that the clerk told him that if it did not scan, someone would notify him.

The bankruptcy court held a trial on the complaint for revocation of discharge. Having heard the testimony and examined the exhibits, the court expressly declined to find that Nielsen had written Ms. White's name onto the list after filing. The court found that Ms. White had not established that the Nielsens had a fraudulent intent. But the court's determination did not depend on that finding. The bankruptcy court instead concluded that even if Nielsen had done what Ms. White accused

---

1. *See* 11 U.S.C. § 727(d)(1) (2000).

him of doing, the omission of Ms. White's name was not material. The discharge would have been granted regardless of the alleged fraud in this no-assets, no-bar-date bankruptcy. That is, discovery of the fraud would not have prevented the discharge. Thus, there was no basis for revoking the discharge.

Ms. White requested a default judgment against Mrs. Nielsen, who did not appear. The judge declined to grant it because the court's reasons for rejecting Ms. White's claim against Nielsen applied equally to his wife. The district court affirmed, and Ms. White appeals.

## Analysis

Ms. White argues that (1) the district court erred in concluding that the discharge should not be revoked due to fraud; (2) she was denied due process of law because her property was taken from her without notice; and (3) the court should have entered a default judgment against the non-appearing Mrs. Nielsen. We reject all three arguments.

We publish this opinion primarily to reaffirm established Ninth Circuit law on the effect of failure to list a creditor in a no-assets, no-bar-date Chapter 7 bankruptcy. We previously held in *In re Beezley* that such a failure does not justify revocation of the discharge, but much of the reasoning in that decision was set out in a concurrence rather than in the terse per curiam opinion.[2] We follow the holding of that opinion and adopt the reasoning of the concurrence.

Ms. White bases her revocation argument on this statutory provision, which provides for revocation of a bankruptcy discharge that was "obtained through the fraud of the debtor":

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge ... [3]

For the predicate "fraud of the debtor," Ms. White relies on Nielsen's alleged tricky omission of her name from the typed mailing list until it was too late to generate mail to her.

■ The bankruptcy judge's careful analysis was correct. The statute for setting aside a discharge on account of fraud requires that the discharge be "obtained through" the fraud. "[O]btained through" is causation language. Fraud in the air will not suffice.[4]

■ For Ms. White to prove that the Nielsens' discharge was "obtained through" the fraud, she must at least show that, but for the fraud, the discharge would not have been granted. That she cannot do. Assuming for purposes of discussion that Nielsen left her name off the typed mailing list on purpose, so that she would not get notice, he and his wife would have been discharged anyway, so far as the record indicates. True, he owed her $8,000, he did not pay her, she had no opportunity to make a claim before he was discharged, and she did not get a penny. But so far as the record supports, the

---

**2.** *In re Beezley,* 994 F.2d 1433 (9th Cir.1993).

**3.** 11 U.S.C. § 727(d)(1).

**4.** *Cf. In re Edmonds,* 924 F.2d 176, 180 (10th Cir.1991); *In re Bowman,* 173 B.R. 922, 925 (B.A.P. 9th Cir.1994) ("The fraud must be proven in the procurement of the discharge and sufficient grounds must have existed which would have prevented the discharge.").

outcome would have been exactly the same had she received the notice to which she was entitled. The only difference would have been that she would have known about the proceedings and had a chance to file something before the discharge, but still she would not have gotten a penny and the Nielsens would have been discharged.

Ms. White's brief makes the good point that just because a bankrupt says he has no assets, that does not make it true. The bankrupt may purposely leave a creditor off the list if that creditor would have knowledge of assets, or if, as with Ms. White, that creditor would have a larger incentive than others to look for assets or find some other reason to thwart discharge. Had Ms. White, in her proceeding to revoke the discharge, shown that, in truth, there were assets, or that there was some reason that the Nielsens should not have been discharged, this would be quite a different case. But she had just as much incentive to find such information prior to filing her complaint in this action as she would have had during the original proceedings, had she received proper notice. So far as the record indicates, she has not found any such information.

■ Ms. White argues that her debt was non-dischargeable under section 523(a)(3)(A), which makes some debts non-dischargeable for failure to schedule a creditor.[5] We rejected this argument in *Beezley*. We held that "dischargeability is unaffected by scheduling" in a Chapter 7 no-assets, no-bar-date bankruptcy.[6] Thus, on the facts of that case, reopening a closed bankruptcy case to permit the debtor to schedule an unlisted creditor "would ... have been a pointless exercise."[7] A dischargeable debt would have been discharged, and a non-dischargeable debt would not have been discharged, regardless of scheduling.

■ Judge O'Scannlain's scholarly concurrence in *Beezley* explains why this is so.[8] While section 523(a)(3)(A) makes some otherwise dischargeable debts non-dischargeable if the creditor is not scheduled, that provision does not have that effect in a no-assets, no-bar-date Chapter 7 bankruptcy.[9] Section 523(a) provides that a discharge under section 727 (such as the Nielsens received) "does not discharge an individual debtor from any debt" not listed or scheduled under section 521(1) "in time to permit ... timely filing of a proof of claim."[10] We assume for purposes of discussion, but do not decide, that leaving a creditor off the mailing list matrix amounts to failing to list or schedule the debt. Such a failure to list nevertheless does not make the debt non-dischargeable in a no-assets, no-bar-date Chapter 7 bankruptcy because, in such a bankruptcy, there is no

---

5. 11 U.S.C. § 523(a)(3)(A) (2000 & Supp. 2004) reads as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection [dealing with debts obtained through certain intentional torts], timely filing of a

> proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing ...

6. *Beezley*, 994 F.2d at 1434.

7. *Id.*

8. *Id.* at 1434–41 (O'Scannlain, J., concurring).

9. *Id.* at 1436.

10. 11 U.S.C. § 523(a)(3)(A).

time limit for "timely filing of a proof of claim," so none are untimely.[11] In other words, filing of a claim is meaningless and worthless in a no-assets case. Therefore, the bankruptcy rules "permit the court to dispense with the filing of proofs of claim in a no-asset case."[12] Since "the entire thrust of [section 523(a)(3)(A)] is to protect the creditor's right to file a proof of claim, and so to participate in any distribution of the assets of the estate," section 523(a)(3)(A) "is not implicated [in a no-assets case] because there can never be a time when it is too late to permit timely filing of a proof of claim."[13]

This reasoning applies to this case. The clerk did not send a notice that non-exempt assets had been located, because there were none, so the date to file claims was never set, and section 523(a)(3)(A) was never triggered. This is not to say that if Ms. White's debt is non-dischargeable, she has lost the opportunity to litigate its dischargeability. Rather, if the debt is non-dischargeable for reasons other than failure to schedule it, then it was not discharged, and non-dischargeability can be litigated outside the normal time limits.[14] But other than her argument based on section 523(a)(3)(A), she asserts no basis for her debt being non-dischargeable.

In short, Ms. White's debt, if dischargeable, did not become non-dischargeable because of failure to list it, since the failure to list could not affect timely filing of a proof of claim. It was therefore discharged under section 727 along with the Nielsens' other debts. Ms. White has not shown how Nielsen's failure to list her, which led to her inability to participate, changed the outcome of the original proceedings—she has not shown how the discharge was "obtained through" the fraud she alleges.

■ Ms. White's due process claim fails because nothing was taken from her. If she had a dischargeable debt, its discharge was not brought about by the lack of notice. If she had a non-dischargeable debt, she still has it.[15] The lack of notice had no effect on her.

■ Finally, the bankruptcy court properly denied a default judgment against Mrs. Nielsen for not appearing. It would have been unjust, and contrary to Ninth Circuit law, to impose a default judgment against Mrs. Nielsen on a theory that the court rejected with regard to Mr. Nielsen.[16]

**AFFIRMED.**

---

11. *See id.*

12. *Id.*

13. *Id.* (internal quotation marks omitted).

14. *Id.* at 1437; *see also* Fed. R. Bankr.P. 4007(a).

15. *See Beezley,* 994 F.2d at 1437 (O'Scannlain, J., concurring).

16. *See In re First T.D. & Inv., Inc.,* 253 F.3d 520, 531–33 (9th Cir.2001).