**In re Michael D. HORLACHER and Irma D. Horlacher, Debtors.**

**Eglin Federal Credit Union, Creditor/Plaintiff,**

v.

**Michael D. Horlacher and Irma D. Horlacher, Debtors/Defendants.**

**Bankruptcy No. 04–31126.**
**Adversary No. 06–03033.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

March 7, 2008.

J. Paul Fitzgerald, Milton, FL, for Michael and Irma Horlacher.

Louis L. Long, Jr., Shalimar, FL, for Eglin Federal Credit Union.

## ORDER GRANTING RECONSIDERATION OF THE NONDISCHARGEABILITY ORDER AND GRANTING DISCHARGE OF CLAIM NO. 17 PURSUANT TO § 726(a)(2)(C)

MARGARET A. MAHONEY,
Bankruptcy Judge.

This matter came before the Court on Defendants' Motion for Reconsideration. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court will reconsider its January 17,

2008 order in light of the interplay between § 523(a)(3)(A) and § 726(a)(2)(C) and discharges Debtors' claim number 17.

## Facts

The Debtors filed a voluntary chapter 7 bankruptcy petition on May 4, 2004. They did not list Eglin Federal Credit Union ("Credit Union") as a creditor on their filed petition or schedules. The Debtors received a discharge on August 10, 2004. The bar date for creditors to file proofs of claim was September 14, 2004. The Credit Union did not receive the court issued notice regarding the proof of claim deadline because it was not listed on Debtors' schedule as a creditor. The Credit Union states that it did not receive notice of Debtors' bankruptcy case until June of 2005.

The Credit Union filed an adversary complaint on December 6, 2006 alleging its claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(3)(A). The Debtors answered the complaint on January 8, 2007; they acknowledged that the Credit Union did not have formal notice of the bankruptcy proceedings but asserted that it did have notice or actual knowledge to be within the exception of § 523(a)(3)(A).[1] On February 28, 2007, the Debtors amended their schedules to list the Credit Union as a creditor, and on March 5, 2007, Debtors filed claim number 17 in the amount of $18,279.95 on behalf of Eglin Federal Credit Union pursuant to § 501(c).

The Credit Union denied the allegation of any actual knowledge of the bankruptcy proceeding and on August 23, 2007 moved for summary judgment in its adversary case. The motion for summary judgment was denied on November 13, 2007 but narrowed the triable issue to whether or not the Credit Union had actual knowledge.

A trial was held on December 14, 2007, to determine if the Credit Union had actual knowledge or notice of the Debtors' bankruptcy. At trial, the Debtors testified that the Credit Union was to be listed as a creditor on their petition and was inadvertently omitted. The Court determined from the evidence presented, the Debtors did not carry their burden of proving that the Credit Union had actual knowledge of the bankruptcy. Based on the evidence before it, the Court issued an order on January 17, 2008 declaring the debt owed to the Credit Union was nondischargeable.

On January 25, 2008, Debtors/Defendants filed a motion asking the Court to reconsider its ruling. The Debtors' motion contained two main theories on why the Court should reconsider its ruling of nondischargeability: (1) that the Credit Union had sufficient information to be charged with actual knowledge under the prudent person standard, and (2) that if the Credit Union had no knowledge of the bankruptcy proceeding, then § 726(a)(2)(C) authorized the creditor to file a "tardy" claim that is effectually "timely" under § 523(a)(3)(A), so the debt is dischargeable. The Credit Union responded on February 13, 2008 asserting two reasons that the Court should not entertain Debtors' motion. The Credit Union contends (1) that the grounds for reconsideration under Rule 59(e) are not met, and (2) that § 726 can not be interpreted to disregard the plain meaning of § 523.

The Debtors' case is still pending. It is unclear whether or not there will be any assets to distribute. There remain two outstanding tort suits for automobile accidents that may bring money into the es-

---

**1.** Debtors also filed a counterclaim, the success of which turned on the outcome of the main issue of notice in the adversary complaint. As such, no counterclaim arguments were heard at trial.

tate. If the suits do not settle or prevail at trial, the Debtors' case will most likely be declared a no asset case. To date, there has been no distribution of any estate proceeds to any creditors.

A hearing on Debtors' Motion to Reconsider was held on February 15, 2008.

## Law and Analysis

■ The Debtors bear the burden of proving that reconsideration of the nondischargeability order is appropriate. *Matter of Homestead Partners, Ltd.*, 201 B.R. 1014, 1018 n. 4 (Bankr.N.D.Ga.1996). A motion for reconsideration may be brought pursuant to Fed.R.Civ.P. 59(e) or 60(b). Federal Rules 59(e) and 60(b) are incorporated into the Bankruptcy Rules and, with exceptions that do not apply in this case, they are identical to Bankruptcy Rules 9023(e) and 9024(b). Therefore, nonbankruptcy cases that interpret the rules are applicable. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689 (M.D.Fla. 1994). "If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* at 694. Debtors filed their motion for reconsideration within ten days of the January 17, 2008 judgment; therefore, the Court will consider the motion under Rule 59(e).

## I. Standard for Reconsideration

■ A motion for reconsideration "is an extraordinary remedy" that is to be used by the courts "sparingly." *Mathis v. United States of America (In re Mathis)*, 312 B.R. 912, 914 (Bankr.S.D.Fla.2004) (quoting *Sussman*, 153 F.R.D. at 694). A motion to alter or amend a judgment may be brought pursuant to the *Federal Rule of Civil Procedure* 59(e). Fed. R. Bankr.P. 9023. "Rule 59(e) does not set forth any grounds for relief and the district court has considerable discretion in

reconsidering an issue;" *Sussman*, 153 F.R.D. at 694 (citing to *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)). The grounds for granting reconsideration of an order are limited to (1) an intervening change in the law, (2) consideration of newly discovered evidence, and/or (3) correcting clear error or preventing manifest injustice. *In re Mathis, supra.*

■ The Debtors move for reconsideration based on their assertion that the debt of the Credit Union should be discharged given the facts of the case under the "prudent person" standard and section 726(a)(2)(C). It is clear from the case law that Debtors cannot move for reconsideration based on this new argument that was available at the time of the trial, but was not advanced. *In re Kellogg*, 197 F.3d 1116, 1120 (11th Cir.1999). The Debtors are not presenting newly discovered evidence to the Court in support of their motion. *Mays v. United States Postal Serv.*, 122 F.3d 43, 46 (11th Cir.1998). Therefore, the only possibility of Debtors' succeeding on their motion for reconsideration is for the Court to find an error in law or manifest injustice in its January 17, 2008 nondischargeability order.

The Court declines to reconsider based on Debtors first contention, that the Court erred in ruling that the Credit Union had actual knowledge based on the prudent person standard. This legal theory and standard was considered by the Court in its January 17, 2008 order. There has been no change in law or newly discovered evidence since that order was issued that would change the Court's analysis. Furthermore, the Court finds no clear error as to the law or facts on this issue or any manifest injustice.

■ As to Debtors second contention, that the nondischargeability order was en-

tered prematurely due to the opportunity the Credit Union has under 28 U.S.C. § 726 to still file a claim and take part in any distribution, the Court will grant reconsideration. This is a new argument presented by Debtors. In fact, it is an argument that could have and should have been brought by the Debtors at the time they responded to the Credit Union's motion for summary judgment or at trial. Section 726 is not new law, nor was new evidence discovered that now makes section 726 applicable to the case where it would not have been before. However, if Debtors are correct in their analysis of the interplay of section 523 and section 726, then the Court has made an error in law and there would be injustice if the nondischargeability order was not reconsidered. For this reason, the Court will reconsider its January 17, 2008 order in light of section 726.

## II. Interplay of § 523(a)(3)(A) and § 726(a)(2)(C)

### A.

The starting place for this review will be the Bankruptcy Code's nondischargeability statute, § 523. The pertinent part of § 523 states:

(a) A discharge under § 727 ... does not discharge an individual debtor from any debt—

\* \* \*

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

28 U.S.C. § 523(a)(3)(A). This statute and the law surrounding it was the focus of the Court, based on the presentation of the parties and their motions, when it made its January 17, 2008 ruling. The court did not previously consider section 726 which states:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

\* \* \*

(2) second, in payment of any allowed unsecured claim ... proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim ...

28 U.S.C. § 726(a)(2)(C). Section 523(a)(3)(A) does not allow the discharge of any debt where a "timely" claim was not made, if the creditor owed did not have notice or actual knowledge of the debtor's bankruptcy. A "timely" claim is one that is filed within 90 days of the first meeting of the creditors. Fed. R. Bankr.P. 3002(c). Generally, a "tardily" filed claim is not allowed to participate in distribution of the estate proceeds. However, 28 U.S.C. § 502(b)(9) makes an exception "to the extent [a claim is] tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title...." The purpose of distinguishing between a timely or tardily filed claim is to set a linear time

line for the case so that there is a specific point at which the trustee knows which creditors will participate in distribution of the estate and how the assets will be distributed. The time line assures finality of a bankruptcy case.

In chapter 11 and chapter 13 cases, this filing deadline is necessary to establish a time line in order to get a plan confirmed, get creditors paid, and get a case closed. However, the cut off date for a creditor to file a claim is not as imperative in a chapter 7 case where there are no assets or before any distribution is made.[2] In a chapter 7 liquidation, the amount of assets, if any, is the same no matter how many creditors are involved; the assets are distributed pro rata among the unsecureds. Section 726(a)(2)(C) acknowledges this difference between a chapter 7 case and a chapter 11 or 13. It allows a chapter 7 creditor to participate in distribution if the creditor had no knowledge of the bar date and files a claim after the set 90 day deadline but before distribution of the estate. In a chapter 7 case, as long as there has been no distribution of assets, there is no harm or prejudice to the creditor in allowing a claim that is filed after the typical bar date for filing.

### B.

The interplay of § 523(a)(3)(A) and § 726(a)(2)(C) has caused confusion in the courts and a split in the case law. The inconsistent decisions can be traced back to § 523(a)(3)(A)'s predecessor, § 17a(3) of the Bankruptcy Act. Section 17a(3) stated that a debt could not be discharged if it was not scheduled in time for it to be proved and allowed in the bankruptcy proceedings, unless the creditor had knowledge of the bankruptcy filing. The Su-

preme Court reviewed the application of this statute in *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904). Birkett failed to list a creditor in his schedules, and the creditor learned of the pending bankruptcy after the debtor's discharge. Birkett argued that § 17a(3) should not apply because his failure to list the creditor was inadvertent and the creditor still had time to act and protect its interest. The Supreme Court held that mistake or inadvertence was irrelevant to the application of § 17a(3). The Court found that the creditor did not have actual knowledge of the pending case—stating that actual knowledge "is a knowledge in time to avail a creditor of the benefits of the law,—in time to give him an equal opportunity with other creditors ..." *Birkett,* 195 U.S. at 351, 25 S.Ct. 38. The Court found the unscheduled debt nondischargeable under § 17a(3).

Under this law, two lines of cases emerged-a strict interpretation of § 17a(3) and a liberal one. In *Milando,* the court followed *Birkett* interpreting § 17a(3) strictly and holding that a debtor could not reopen his no asset case to amend his schedules to add an inadvertently omitted creditor. *Milando v. Perrone,* 157 F.2d 1002 (2nd Cir.1946). The *Milando* court reasoned that the language of the statute was clear and could not be altered. The fact that the creditor would not have received any dividends even if it had filed before the bar date was of no consequence to the court. *Id.* at 1003–04.

On the other side of the spectrum was *Robinson v. Mann,* 339 F.2d 547 (5th Cir. 1964). *Robinson* illustrates the liberal interpretation of § 17a(3). *Robinson* held that bankruptcy courts had the discretion to allow a debtor to amend his schedules

---

**2.** In a chapter 7, no asset case, where no bar date has been set, section 523(a)(3)(A) is not even applicable. *See Stone v. Caplan (Matter of Stone),* 10 F.3d 285, 291 (5th Cir.1994); *In re Stark,* 717 F.2d 322 (7th Cir.1983) (setting of the bar date triggers § 523).

after the expiration of the bar date under "exceptional circumstances" due to the equitable power that bankruptcy courts had.[3] The *Robinson* court suggested such factors for consideration as (1) the reasons for the omission, (2) the degree of disruption that would result if the amendment were allowed, and (3) the prejudice to creditors.

### C.

The language of § 17a(3) was changed by Congress when the Bankruptcy Reform Act of 1978 was enacted. Section 17a(3), which stated that a debt could not be discharged if it was not scheduled in time for it to be proved and allowed in the bankruptcy proceedings, was changed to the current § 523(a)(3)(A) and now prohibits the discharge of a debt that is "neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim, unless [the] creditor had notice or actual knowledge of the case in time for ... timely filing." § 523(a)(3)(A). The exact distinction between the language of these two statutes is not easily discernable by the language alone. However, the alteration must be of some significance or Congress would have saved itself the effort and continued to use the same wording of § 17a(3). *Samuel v. Baitcher (Matter of Baitcher)*, 781 F.2d 1529, 1533 (11th Cir. 1986).

▇ The legislative history would be beneficial in determining Congress' intent in enacting § 523(a)(3)(A). The legislative purpose could help the Court in analyzing the statute and coming to the correct interpretation of the statute. However, courts cannot look to legislative history of a statute unless the words of the statute are unclear. *Wachovia Bank, N.A. v.*

*United States,* 455 F.3d 1261, 1268 (11th Cir.2006). At first glance, the phrasing of § 523(a)(3)(A) does not appear to be ambiguous. However, its usage of the term "timely" could be referring to the specific 90 day bar date period, or in a chapter 7 case it could be referring to the available time a creditor has to make a claim to participate in distribution (especially when the case is a no asset case, Fed. R. Bankr.P. 3002(c)(5)). Since the term could mean either of two things, it is ambiguous. Therefore, the Court should look to other provisions of the Code to find the interpretation that is consistent with the rest of the law. *Id.* (citing *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004)). Given the questionable meaning of the term "timely" in § 523(a)(3)(A), the Court will look to the legislative history of the enactment of § 523(a)(3)(A) in attempt to find Congress' intent in creating the statute and will look to the context of other Code provisions to ensure the interpretation of § 523(a)(3)(A) is "as harmonious as possible." *Id.* (citing *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918)).

### III. Legislative History of § 523(a)(3)(A)

According to the House and Senate reports, Congress' purpose for revising § 17a(3) "was to validate the liberal, *Robinson-type* approach and to overrule *Birkett*, which strictly construed section 17a(3)." *Stone v. Caplan (Matter of Stone)*, 10 F.3d 285, 290 (5th Cir.1994). The Senate Report states that § 523(a)(3)(A) is

derived from section 17a(3), follows current law, but clarifies some uncertainties generated by the case law construing

---

**3.** While *Robinson's* reasoning has been subsequently applied to the question of dischargeability, this was not in the analysis of the

*Robinson* decision. The sole issue in *Robinson* was the right of the debtor to amend his schedules (Rule 1009(a) did not yet exist).

17a(3). The debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case.

S.Rep. No. 95–989, at 78–9 (1978), *reprinted in* 1979 U.S.C.C.A.N. 5787, 5864; H.R.Rep. No. 95–595, at 364 (1977), *reprinted in* 1979 U.S.C.C.A.N. 5963, 6320. The House Report is more specific in its intent in its statement that § 523(a)(3)(A) is "intended to overrule *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904)." H.R.Rep. No. 95–595 (1977), *reprinted in* 1979 U.S.C.C.A.N. 5963, 6453. It should also be noted that Congress never overruled *Robinson. See Laczko v. Gentran, Inc. (In re Laczko),* 37 B.R. 676, 679 (9th Cir. BAP 1984).

### IV. Law After Enactment of § 523(a)(3)(A)

 Following the enactment of § 523(a)(3)(A), the courts continued to be split and follow the reasoning of either the liberal *Robinson* decision or the strict *Milando* decision (even though *Milando* had interpreted § 17a(3) as *Birkett* did, and Congress intended to overrule *Birkett* with its enactment of § 523(a)(3)(A)).

Courts interpreting § 523(a)(3)(A) strictly read the statute to be unambiguous and do not go beyond its plain meaning. Often for these courts, it is the setting of the bar date that triggers the application of § 523. For instance, in *Laczko,* the debtors filed a chapter 7 case and inadvertently omitted a creditor from their schedules. The creditor had no notice or knowledge of the bankruptcy case until after the expiration of the date to file proofs of claim. After the debtors received their discharge and the bar date for filing claims had passed, the debtors amended their schedules to include the creditor and sought to have the debt discharged. The debtors argued that although a bar date had been set, the case ended up being a no asset case; therefore, there was no harm or prejudice to the creditor by allowing a late amendment and subsequent discharge. The court, however, aligned itself with *Milando* and concluded that the debt was not dischargeable because "[t]he courts have no power to disregard [the] clear language" of § 523(a)(3)(A). *Laczko v. Gentran, Inc. (In re Laczko),* 37 B.R. 676, 679 (9th Cir. BAP 1984).

Under the same facts as *Laczko,* the *Bosse* court stated that it was

unpersuaded that it should go beyond the unambiguous language of section 523(a)(3)(A), and former section 17(a)(3) and adopt the approach of *Robinson v. Mann.* Section 523(a)(3)(A), as written, may indeed produce harsh consequences which courts have struggled to avoid. This may be especially true in light of the policy in favor of a fresh start for the debtor. However, bankruptcy courts, as courts of equity, must follow express statutory authority to the same extent as courts of law. To that end, this court is powerless to ignore the plain language of § 523(a)(3)(A) in order to reach a result more in line with equitable ideas.

*Spilka v. Bosse (In re Bosse),* 122 B.R. 410, 415–16 (Bankr.C.D.Cal.1990) (internal citations omitted). *Bosse* concluded that § 726(a)(2)(C) did not read out § 523(a)(3)(A). Instead, it held that § 726(a)(2)(C) allowed a nondischargeable claim under § 523(a)(3)(A) to participate in any distribution that may occur in attempt to off set any uncollectible nondischarged debt. *Id.* at 416.

In *Reese,* the debtor in a closed chapter 7 case moved to reopen her case to amend her schedules to list an inadvertently omitted creditor three years after the time to

file complaints had passed. *Reese v. NCNB Nat'l Bank of Florida,* 133 B.R. 245 (Bankr.M.D.Fla.1991). No bar date had been set in the case and, in fact, creditors had been advised not to file proofs of claim until and unless assets were discovered. The bankruptcy court allowed the debtor to reopen and amend, and motions for summary judgment were brought by the debtor and the creditor to determine the dischargeability of the debt. The debtor argued since no bar date had ever been set, there was no deadline established for filing a claim, and the creditor could still file a claim. The creditor argued that because it was not scheduled, it was unable to participate in the case and, therefore, the debt should be nondischargeable. The court disagreed with debtor's assertion that there was no prejudice to the creditor and concluded that the creditor is entitled to the option of being able to file a claim (even if the filing would be "clearly illusory" in a no asset case) and participate in the bankruptcy proceeding. *Id.* at 247. After determining that the creditor was omitted from the schedules originally and that the creditor had no knowledge of the case, the court held that the creditor was entitled to summary judgment and excepted the debt from discharge. *Id.* at 247–48.

Other courts have continued to interpret § 523(a)(3)(A) liberally. For the courts that have followed the *Robinson* line of cases, they have typically held not only that a case may be reopened and amended to include an omitted creditor, but also that such claims are dischargeable. *Bosse,* 122 B.R. at 415. These courts have also discharged the omitted debts that are filed after the claims bar date has expired, but before a case is closed.

In an open case, where the bar date had passed and no distributions had been made to creditors, the debtor who had inadver-

tently omitted a creditor (who had no knowledge of the bankruptcy) from his schedules filed a late claim on behalf of the creditor, and the court held that the debt would be discharged (except for the attorney's fees and costs incurred by the creditor in pursuing its state court actions before it knew of the debtor's bankruptcy). *Homestate Ins. Brokers of Alaska, Inc. v. Brosman (In re Brosman),* 119 B.R. 212 (Bankr.D.Alaska 1990). *Brosman* cited *Laczko* but declined to follow its strict interpretation because of Laczko's failure to reconcile the nondischargeability of an untimely claim under § 523(a)(3)(A) with the allowance of a tardily filed claim under § 726(a)(2)(C). Instead, *Brosman* concluded that the analysis of *Robinson* was "a much better reasoned approach to the problem of unscheduled creditors as it allows an honest but mistaken debtor a fresh start." *Id.* at 214. The court found

> that exceptional circumstances exist[ed] in [the] case for the discharge of the [creditor's] claim. The debt was not listed simply through mistake or inadvertence; there were no assets for distribution to creditors; there was no fraud or intentional laches. There was no prejudice to the creditor other than the incurring of costs and attorney's fees in state court.

*Id.* at 216. Under the same fact scenario, *Kuhr* held that as long as a creditor still had the right under § 726(a)(2)(C) to file a tardy claim and participate in distribution meant that the debt was not subject to § 523(a)(3)(A). *Southern Pacific Land Co. v. Kuhr (In re Kuhr),* 132 B.R. 421 (Bankr.E.D.Cal.1991). *Kuhr* reasoned that the only purpose in a creditor filing a claim in a chapter 7 case is to allow the creditor to participate in any distribution of the estate. This theory is supported by § 726(a)(2)(C) since it grants a creditor the right to file a claim *anytime* after it receives notice or knowledge of a bankruptcy

case, but before any distribution of the estate, and still participate fully (on the same level) with the creditors that filed timely claims. It finds further support in Rule 2002(e) which authorizes the court to advise creditors in a no asset case that they need not file claims unless assets are discovered for distribution. The *Kuhr* court deduces that since "timeliness is employed as a standard for determining which creditors will share in asset distribution and which creditors will not," that " '[t]imely' under section 523(a)(3)(A) can only mean filed *in time* to receive on an equal footing distribution of any dividends paid pursuant to section 726(a)." *Id.* at 423–424. As to the fact that Kuhr had filed the late claim on behalf of the creditor and the creditor then sought to have it excepted from discharge, the court stated the fact

> [t]hat the creditor in this case has chosen not to file a claim does not affect the debtor's right to a discharge of the debt, as the creditor's failure to file a claim is no different than the failure of a creditor who received notice at the outset of the case to file a claim.

*Id.* at 424. The court held that since the creditor still had time to file a claim and participate in any distribution, that its debt was not excepted from discharge. *Id.*

In a Florida case, where a debtor began litigation in state court prior to filing bankruptcy, continued the suit through the bankruptcy case (unbeknownst to the creditor), and had a final judgment rendered against debtor after he received a discharge and his bankruptcy case was closed, the debtor was allowed to reopen his case, amend his schedules, and have the judgment debt discharged because it was an no asset where no bar date had ever been set (so it never expired triggering the application of § 523(a)(3)(A)). The court reasoned that "the Defendants still

[had] the right to file a claim, although doing so would be futile, and nothing more than an exercise in futility." *Kirkpatrick v. Kogan (In re Kirkpatrick)*, 216 B.R. 663, 666 (Bankr.M.D.Fla.1997). In a case with similar facts, except where a claims bar date was set but the case was closed as a no asset case, the court allowed the discovered debt to be discharged. The court reasoned that the creditor was not prejudiced in its lack of notice, because the case ultimately was a no asset case. The court concluded that the "right to receive a distribution from the estate is the only right protected by the 'timely filed proof of claim' prong of the statute, and as such, the only standard by which material prejudice may be measured." *Premier West Bank v. Rajnus*, 2007 WL 2571944, *3 n. 7 (Bankr.D.Or.2007) (citing *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 927 (9th Cir.2004)).

The Fifth Circuit affirmed *Robinson* in *Stone v. Caplan (Matter of Stone)*, 10 F.3d 285 (5th Cir.1994). After determining § 523(a)(3)(A) was ambiguous, the Fifth Circuit looked to other Code provisions for the meaning of the term "timely" and to the legislative history of § 523(a)(3)(A). In reviewing the Congressional reports, the Fifth Circuit was convinced that its *Robinson* ruling was correct, and applied its reasoning and three factor test to *Stone*. *Stone*, 10 F.3d at 290–92. *Stone* involved an open case where the debtors failed to list a creditor who had no knowledge of the bankruptcy case until a year after the claims bar date had expired. When the creditor received knowledge of the case, it filed a complaint with the bankruptcy court and requested the debt be declared nondischargeable under § 523(a)(3)(A). The debtors then amended their schedules and listed the creditor. By this time, it was determined that the case was a no asset case. The court determined that there was no fraud or inten-

tional design in debtors failing to list the creditor and no undue burden would placed on the courts if the claim was allowed. Furthermore, the court concluded there was no prejudice to the creditor because its right to receive its share in the distribution had not been compromised because no creditors would receive any dividends. The court stated that the creditor's "rights to participate in dividends would not be any different had they been listed *first* on the Stone's schedules." *Id.* at 291.

Having an allowed claim is how a creditor gets to participate in the distribution of the estate. A proof of claim is deemed allowed once it is filed if there is no objection to it. § 502(a); *see also,* Fed. R. Bankr.P. 3002(a), 3004. Section 523(a)(3)(A) protects a creditor's right to participate in distribution by focusing on the necessity of filing a "timely" claim. *Lott Furniture, Inc. v. Ricks (In re Ricks),* 253 B.R. 734, 742 (Bankr.M.D.La.2000). Section 502(b)(9) disallows an untimely filed claim, except to the extent that it is a tardily filed claim under § 726(a). *Ricks* found that the interplay of these statutes meant that "a tardily filed claim under § 726(a)(2)(C) becomes the functional equivalent of a timely filed claim. The claim, though technically tardy, is allowed, and permitted status tantamount to that accorded timely filed proofs of claim." *Id.* at 744. *Ricks* concludes that because the creditor became aware of the bankruptcy case before any distribution, that the creditor "had, and has, the ability to file a proof of its claim which, though untimely under *Rule 3002(c),* would be treated as though it had been timely filed. [The creditor's] right to participate in the distribution of the debtor's estate remains unaffected by the claims bar date." *Id.* at 747. The *Ricks* court does not rely on legislative history or equitable principles, but

notes that both support the court's holding. *Id.*

There is little available law on this issue in the Eleventh Circuit. However, at the time the Fifth Circuit decided *Robinson,* Florida was part of the Fifth Circuit. Post–*Robinson,* the Eleventh Circuit seems to have sided with the liberal view after the enactment of § 523(a)(3)(A). The Eleventh Circuit stated that the new rule of § 523(a)(3)(A)

> does not in a no-asset case any more deny a discharge to one who has failed to schedule for reasons of honest mistake, not 'fraud or intentional design.' This would be an inequitable result, in the absence of prejudice. Hence, if Baitcher can show absence of fraud or intentional design, she should have her discharge....

*Samuel v. Baitcher (In re Baitcher),* 781 F.2d 1529, 1534 (11th Cir.1986) (This was a chapter 7, no asset, closed case where the debtor wanted to reopen her case to include an inadvertently omitted creditor). *Baitcher* was on appeal from a motion for summary judgment. The court vacated the summary judgment and remanded for trial to determine the factual issue of any possible fraud or intent in debtor omitting the creditor. Therefore, the language in the opinion relating to the dischargeability of the debt is dicta, but it is clear how the court would have ruled if the issue had been directly before it.

## V. Conclusion

The cases of *Kuhr, Brosman, Laczko,* and *Ricks* were all open cases where a creditor was inadvertently omitted from the debtor's schedules. All had claim filing bar dates expire before the creditor had knowledge of the debtor's bankruptcy. All had debtors who sought to add the omitted claim and have it discharged, and none had distributed any dividends from

the estate. *Laczko,* a Ninth Circuit case, is the only case that is on point factually where the court declared the debt was excepted from discharge.[4] *Kuhr* and *Brosman* are also Ninth Circuit cases, but they hold that the debts are dischargeable. None of these three decisions are binding on this Court. *Ricks* also has virtually identical facts to this case but, as a Fifth Circuit case, is not binding on this Court either. However, *Ricks* does stem from *Robinson,* and this Court was within the binding jurisdiction of the Fifth Circuit when *Robinson* was decided. The Court is bound by *Baitcher, supra. Baitcher* is one of the few cases on this issue from the Eleventh Circuit, and it supports *Robinson* in dicta. Therefore, until the Eleventh Circuit rules otherwise, this Court concludes it must follow the liberal interpretation that appears to be the law of this Circuit.

Furthermore, *Reese, supra,* and *Kirkpatrick, supra,* two Florida cases, are not overwhelmingly persuasive since they reach opposite conclusions. *Reese* was a closed no asset case where a bar date was never set. When the debtor moved to reopen, amend the schedules to list the creditor and have the claim discharged, the court would not discharge the debt. However, in similar facts, the court in *Kirkpatrick* discharged the debt. *Reese* focused on the fact that because the case was closed, the creditor was not allowed to participate in the bankruptcy proceeding. In *Kirkpatrick,* the court focused on the fact that the creditor could technically still file a claim. Neither of these two cases is directly on point. In this case, the Debtors' bankruptcy case is still open and no distribution has been made to any credi-

tors. The Credit Union still has the opportunity to file a claim and take part in any distribution that is made. This is factually different from *Reese* and *Kirkpatrick* where the case was already closed. If the Credit Union files a claim, it can participate in any distribution just as it would have if it had been listed first on Debtors' schedules. If the case turns out to have no assets, then the Credit Union will once again be in the same position it would have been had it been listed by Debtors from the start. *See Stone,* 10 F.3d at 291.

Given that the Eleventh Circuit appears to support *Robinson,* this Court will apply the three factor test put forth in *Robinson* to the facts of this case: (1) the reasons for the omission, (2) the degree of disruption that would result if the amendment were allowed, and (3) the prejudice to creditors.

First, at trial the Court heard testimony from the Debtors as to why the Credit Union debt was not included. It was clear to the Court that the omission was by inadvertence, a mistake. The Debtors' testimony was credible and candid. Furthermore, the Credit Union did not dispute this. The Credit Union has not made any argument that the Debtors acted with improper motive or intended to omit it from the Debtors' schedules. The Credit Union only asserts that it was left off of the bankruptcy schedules, and Debtors admit this. Based upon the admissions of the parties and the testimony at trial, the Court finds that the Credit Union was inadvertently omitted from the Debtors' schedules, and the Credit Union had no

---

4. The Ninth Circuit has decided numerous cases on this § 523(a)(3)(A) issue and has interpreted the statute both strictly, as in *Laczko, supra,* and liberally, as in *Brosman, supra.* See *Purcell v. Kahn (In re Purcell),* 362 B.R. 465, 473–76 (Bankr.E.D.Cal.2007) for a discussion on the Ninth Circuit adopting both a liberal and strict interpretations regarding the dischargeability of claims filed after the passage of the bar date.

notice or knowledge of the Debtors' case until after the expiration of the claims bar date.

Second, the Court finds that there would be no undue burden on the Court or the parties if the claim was allowed. The Debtors are allowed to amend their schedules at anytime before the close of the case under Rule 1009.

Third, there is no prejudice to the Credit Union or other creditors if the debt is discharged. Section 726(a)(2)(C) clearly authorizes the Credit Union to file a claim, even now, and fully participate in any distribution that may occur in this case. Since the Code allows this claim to still be filed by the Credit Union, it is still timely and is not excepted from discharge under § 523(a)(3)(A).

Based on the ambiguity of the term "timely" in § 523(a)(3)(A), the Court looks to the legislative history and other Code provisions to determine the meaning and intent of the nondischargeability statute. After reviewing the Congressional reports and finding that Congress intended to overrule the strict interpretation of § 17a(3) by its enactment of § 523(a)(3)(A), the Court concludes that the liberal interpretation is the correct interpretation. This is supported by the limited law of the Eleventh Circuit.

For these reasons, the Court GRANTS the Debtors' Motion to Reconsider and GRANTS the dischargeability of the Credit Union claim (number 17).