# United States Court of Appeals
## For the First Circuit

Nos. 08-1065, 08-1393

COLONIAL SURETY COMPANY,

Plaintiff, Appellee,

v.

AVI WEIZMAN,

Defendant, Appellant.

_____

UNI-CON FLOORS, INC., KATHERINE L. HEBERT, SCOTT HEBERT,
JOHN A. PACHECO, JAMIE K. PACHECO, KRISTINE WEIZMAN,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Stahl and Lipez,
Circuit Judges.

John E. Zajac with whom Carmichael & Zajac, P.C. were on brief
for appellant.
Steven Shane Smith with whom Francis A. Shannon, III and
Shannon Law Associates, Inc. were on brief for appellee.

May 6, 2009

**BOUDIN, <u>Circuit Judge</u>**. In January 2007, Colonial Surety Company ("Colonial") brought suit in federal district court against Uni-Con Floors, Inc. ("Uni-Con") and its indemnitors. The latter promised reimbursement to Colonial for any losses, costs, and expenses incurred by Colonial on bonding for certain construction contracts entered into by Uni-Con Floors. Uni-Con defaulted on two of these contracts, requiring Colonial to pay $813,129.61 to complete work assured by Colonial bonds.

One of the indemnitors was Avi Weizman. Weizman and the other defendants were defaulted for failure to appear but (for reasons not here pertinent) the district judge thereafter vacated the default judgment as to Weizman. Weizman in turn defended against Colonial's claim on the ground that he had not signed the indemnity contract (instead, his wife had signed for him) and, alternatively, that any liability of his was discharged as a result of his own bankruptcy discharge in 2006.

After a two-day bench trial, the district court rejected these defenses and found Weizman liable to Colonial based on the bonded contracts that Uni-Con Floors had failed to complete. The court ruled that even though Weizman's signature on the 1998 indemnity agreement had been affixed by his wife, Weizman had thereafter become liable under the agreement by signing a separate indemnification agreement in 2005 which incorporated the 1998

agreement by cross-reference. Weizman's arguments on appeal do not challenge this latter ruling.

Instead, Weizman's appeal is based on his defense that any such liability to Colonial was expunged by Weizman's discharge in bankruptcy. Weizman had filed for chapter 7 bankruptcy in October 2005 and had been discharged in April 2006, but he did not list Colonial as a creditor and his schedule of debts had not mentioned indemnity obligations.[1] The district court found that Colonial's indemnity claims against Weizman did not exist at the time of the bankruptcy proceeding and so were not discharged.

In the district court, Weizman argued that the underlying obligation created by the 1998 indemnification agreement, to which he became a party in 2005, did exist at the time of bankruptcy and could therefore be discharged. Under Weizman's theory, it mattered not that Uni-Con's defaults on the two projects (which occurred in September 2006) came after his bankruptcy discharge. The district court, focusing on the claims triggered by the defaults, was not persuaded.

Following the district court's decision on liability, Weizman filed a Rule 59 motion asking the court to reconsider, in part based upon a new argument. Specifically, Weizman argued that

_____

[1]The terms "listed" and "scheduled" refer to a debtor's obligations under 11 U.S.C. § 521 (2006) to "list" creditors and "schedule" liabilities and assets. On the bankruptcy forms, schedules D-F call for a debtor to list creditors and the details of each debt.

his filing for bankruptcy was itself a breach of the 1998 indemnification agreement, which made bankruptcy of an indemnitor an act of default; and to this extent Colonial had a matured claim against Weizman for breach of the indemnification agreement once he filed his bankruptcy petition in 2005. The district court denied that motion without further discussion.

One other aspect of the district court proceedings bears mention. Colonial contended in the district court that Weizman, in listing his assets in the bankruptcy proceeding, had not disclosed that he owned 1,000 shares of stock in a sister company of Uni-Con Floors. Weizman's seeming position is that the shares were not shown to have any value, but the district court expressly found the omission fraudulent; it so advised the bankruptcy court.

However, the district court did not rest its rejection of Weizman's bankruptcy discharge defense on the supposed fraud. Presumably, the district court believed (correctly) that invalidating a discharge for fraud is a matter for the bankruptcy court, 11 U.S.C. § 727(d); by contrast, Weizman's defense in the district court necessarily called on the district court to determine whether the discharge encompassed the claims on which Colonial sued.

In due course, the district court entered a final judgment in the amount of $813,179.61 jointly and severally against all of the defendants on the indemnity contract, representing the

costs to complete contractually promised work at the two projects. Weizman has now appealed to this court, pressing anew his argument that the bankruptcy discharge bars the present judgment against him. Colonial contends that this argument is partly forfeited but that in any event Weizman's failure to list Colonial as a creditor in the bankruptcy court means that such an obligation is not discharged.[2]

We begin with the district court's ruling that the discharge did not include Colonial's claims against Weizman because they had not arisen at the time of the bankruptcy: in a nut shell, that an April 2006 discharge could not wipe out Colonial's claims, which arose only with the September 2006 project defaults by Uni-Con. But the Colonial claims rest upon the indemnification agreement that itself was made before the bankruptcy filing and it is his obligation under the agreement that Weizman says was discharged.

The Bankruptcy Code defines "claim[s]"--which are potentially subject to discharge in the bankruptcy proceeding--to include rights to payment that are inter alia "fixed, contingent, matured, unmatured, disputed, [and] undisputed," 11 U.S.C. § 101(5)

---

[2]As already noted, only after trial did Weizman argue for the first time that his own bankruptcy filing breached the indemnification agreement. We agree that the argument was forfeited and do not address it further. See Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 687-88 (1st Cir. 1994); Federal Deposit Ins. Corp. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992).

(2006). Weizman's best argument is that the indemnification itself was a contingent claim against Weizman that might be deemed to mature if and as Uni-Con defaulted on bonded projects.

In his support, case law holds that the "claim" language is to be read very broadly and can include claims that are uncertain and difficult to estimate. Maynard v. Elliott, 283 U.S. 273, 275-78 (1931); In re THC Financial Corp., 686 F.2d 799, 802-03 (9th Cir. 1982). Seemingly Congress in adopting this language meant to leave phrasing that had been read more grudgingly to disallow discharge of claims that had been doubtful or speculative at the time of bankruptcy. See S. Rep. No. 95-989, 95th Cong., 2d Sess. (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 5787.

Although Weizman and others liable on the indemnification agreement were obligated under the agreement from the outset, it would seem hard to value a claim under the indemnification agreement prior to Uni-Con's defaults. And, if the primary purpose of a claim is to allow the creditor to participate in the distribution of assets of the estate, one blanches at the notion that a claim could be discharged even though it was too speculative to be valued and so to share in the bankrupt's assets.

However, some of the decisions--including one of our own--treat contingent claims as intrinsically dischargeable under the present statute, saying that the court must just make the best

estimate it can as to the present value of the claim.  In re Hemingway Transp., Inc., 954 F.2d 1, 8 (1st Cir. 1992).  One of the treatises discusses indemnity contracts not yet triggered by a default as posing a difficult issue but assumes that estimation is the answer.  3 Collier on Bankruptcy, ¶ 51.11, at 51-25 (15th ed. 2009).

Accordingly, we think that under Hemingway Weizman's position is correct and that Colonial's claims rested on an earlier obligation that comprised a contingent claim capable of being discharged by his later bankruptcy.  Technically, the discharge is of a "debt," 11 U.S.C. § 523(a) (2006), rather than a  "claim" (which is what the debtor must list); but the code's definition of debt and associated case law indicate that the two concepts are to be read together.  See 11 U.S.C. § 101(12) (2006).

Still, not all dischargeable debts are then discharged, and we agree with Colonial that Weizman's discharge in bankruptcy did not include the claim or claims at issue here.  Section 523(a)(3)(A) of the bankruptcy code precludes discharge of a debt if it was

> neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.[3]

---

[3]Subsection (A), in words omitted from the quotation, applies this restriction to most debts including those at issue here;

This language, as we read it, provides what one might expect to be the general rule: that if the debtor fails to list a supposed creditor's claim--meaning that the creditor will not be notified of the opportunity to participate in the proceeding (and the creditor does not otherwise happen to know of the bankruptcy), the debt is not discharged.

Conceivably (Weizman so argues in this case) a debtor might not realize that contingent contractual obligation to indemnify constitutes a claim or debt that could be discharged. But, as between the debtor who knows what contracts he has signed and the creditor ignorant of the bankruptcy filing, surely the debtor is best suited to identify those from whom it desires a discharge so they can be provided with notice. This, we think, is the plain message of section 523(a)(3).

Colonial says that this outcome is compelled because otherwise the bankruptcy code would deny the creditor an opportunity to be heard before being deprived of its property. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Because we think that section 523(a)(3) makes listing (or actual notice or knowledge) a condition of discharge, the constitutional claim need not be considered. This is so even though our reading is not universally shared.

_____

subsection (B) applies a somewhat similar rule to debts, primarily related to deliberate wrongdoing, not captured by the general rule under subsection (A). 11 U.S.C. § 523(a)(3).

In a leading decision by a highly respected judge, the Ninth Circuit has construed section 523(a)(3) not to apply to so-called no asset bankruptcies, which is what Weizman claims his proceeding to have been.  See In re Beezley, 994 F.2d 1433, 1435-37 (9th Cir. 1993) (O'Scannlain, J., concurring).[4]  A no asset bankruptcy is one in which the bankrupt claims in his filing that he has no assets to distribute to ordinary creditors.  As the Administrative Office explains:

> If all the debtor's assets are exempt or subject to valid liens, the trustee will normally file a "no asset" report with the court, and there will be no distribution to unsecured creditors. Most chapter 7 cases involving individual debtors are no asset cases.

http://www.uscourts.gov/bankruptcycourts/bankruptcybasics.html.

Although chapter 7 does not distinguish no asset bankruptcies, the bankruptcy courts do curtail proceedings in no asset cases and may choose not to fix a bar date for submitting claims.  E.g., In re Walendy, 118 B.R. 774, 775 (Bkrtcy C.D. Cal. 1990).  The creditors may be notified that the debtor purports to have no assets and that they need not file claims. Fed. R. Bankr. Proc. 2002(e).  Yet a creditor, if notified, could appear to contend that the debtor does have assets.

---

[4]Beezley itself was a short per curiam opinion but in In re Nielsen, 383 F.3d 922, 925 (9th Cir. 2004), a full panel ruled that "the reasoning in [Beezley] was set out in a concurrence rather than in the terse per curiam opinion.  We follow the holding of that opinion and adopt the reasoning of the concurrence.").

-9-

Section 523(a)((3) uses the phrase "in time to permit . . . timely filing of a proof of claim," and Beezley reasoned that the no-notice/no discharge provision does not apply to no asset cases because no bar date is ever established and therefore no filing of a claim is ever rendered untimely. With respect, we think that the statute aims to assure creditor notice before discharge and the idea that "timely filing" remains available after the bankruptcy proceeding closed is surely not what Congress had in mind. The history of the provision bears this out.

The original 1898 Bankruptcy Act provided that a discharge was barred for debts that "have not been duly scheduled in time for proof and allowance" unless the creditor had notice or actual knowledge of the bankruptcy, section 17(a)(3); and the slightly more permissive present language ("neither listed or scheduled . . . in time to permit . . . timely filing of a proof of claim") was substituted in the 1978 Bankruptcy Code for a narrow and specific purpose, namely, to "overrule" a 1904 Supreme Court decision, Birkett v. Columbia Bank, 195 U.S. 345 (1904). H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N 5963.

Birkett dealt with an unusual case where a creditor was not listed, a discharge was granted and in the relatively brief period between the discharge and the full distribution of assets, the creditor learned of the bankruptcy--and did so in time that a proof of claim could have been filed entitling the creditor to

-10-

participate in the estate. Even so, the Supreme Court held that the 1898 language ("not been duly scheduled") governed and the debtor was unprotected by the discharge. Birkett, 195 U.S. at 350. The 1978 Bankruptcy Code substitution was apparently meant only to undo this overly-rigid reading.

Even so, the Ninth Circuit reading has been followed, usually without much analysis, by other circuits; stress is usually placed on the absence of prejudice and on remedies available to the un-notified creditor if the debtor acted with fraudulent intent or if unlisted assets held are later discovered.[5] By contrast, the Seventh Circuit took a different approach--broadly consistent with our view--in which it assumed that an unlisted debt was not discharged. In re Stark, 717 F.2d 322 (7th Cir. 1983).

In Stark, the holding was that that a no asset debtor could, long after the discharge, ask the bankruptcy court to reopen the proceeding to list belatedly a creditor who was innocently omitted and who would have received no benefit from notice. 717 F. 2d at 324. But such a course properly leaves the burden on the debtor to show that the law and equities justify this relief-- absent which the debt will remain undischarged.

Weizman was free to seek that relief and started down that path; he did file a motion in the bankruptcy court, after the

---

[5]In re Madaj, 149 F.3d 467, 470 (6th Cir. 1998); Judd v. Wolfe, 78 F.3d 110, 111 (3d Cir. 1996); Stone v. Caplan, 10 F.3d 285, 291 n.13 (5th Cir. 1994).

-11-

present district court litigation began, seeking to list his obligation to Colonial and so obtain the benefit of the discharge despite the lack of original notice. But he thereafter withdrew the request, possibly not caring to face the charge (endorsed by the district judge) of fraudulent concealment of assets in the original bankruptcy.

Nothing in the language or history of the 1978 revision of section 523(a)(3) indicates that Congress aimed to carve out no asset bankruptcies from what we perceive to be a general rule that listing the creditor is a condition of discharge. The qualifying phrase about timely filing recognizes that notice may be given late in the bankruptcy-proceeding day but still in time for the creditor to participate in the bankruptcy proceeding. Here, the bankruptcy proceeding was completed with no notice to Colonial.

That the debtor claims to have no distributable assets might make one think that the creditor is not harmed by the lack of notice and so the Ninth Circuit reading is just a shortcut to a no harm, no foul outcome. But no asset claims are easy to make; a creditor might want notice precisely to argue that there are assets even though the debtor asserts otherwise. Colonial also argues that notice would have permitted it to take earlier action against other indemnitors to protect itself.

It is true that an unnotified creditor is not entirely helpless even after the bankruptcy proceeding is long over: the

discovery of overlooked assets and the opportunity to prove fraud can be grounds for reopening the bankruptcy.  But so, too, can a debtor move to reopen to list a debt where the failure to give notice was innocent and can be shown to have caused no harm; consistent with <u>Stark</u>, we conclude that in such a case the debtor would be entitled to such relief.  Yet the burden of doing so is fairly upon the debtor who failed to give notice--or so Congress seems to have thought.

But it is not merely a matter of burdens.  <u>Beezley</u> means that the un-notified creditor gets protection only if limited specified grounds can be established; by contrast, a debtor who moves to reopen to list a debt long after discharge surely must show that the omission was innocent and, even so, can probably be countered by anything that makes it inequitable to grant such relief.  As between <u>Beezley</u> and <u>Stark</u>, we think that the latter best fulfills the aim of Congress.

<u>Affirmed</u>.