# United States Court of Appeals
## For the First Circuit

No. 09-1005

JANELLE REDERFORD,

Plaintiff, Appellant,

v.

US AIRWAYS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge, and Saylor,* District Judge.

Howard Moore, Jr. with whom Moore & Moore was on brief for
the appellant.
Daniel E. Farrington with whom The Farrington Law Firm, LLC
was on brief for the appellee.

December 14, 2009

---

*Of the District of Massachusetts, sitting by designation.

**LYNCH**, **Chief Judge**.  In 2008, Janelle Rederford brought suit under the Americans with Disabilities Act ("ADA") for events occurring in 2002 in federal district court against US Airways, Inc.  The court dismissed the suit on the grounds that the ADA claims had been disallowed and also had been discharged as "claims" under the Bankruptcy Code in the airline's 2003 bankruptcy.  The federal court also rejected Rederford's arguments that she was nonetheless entitled to relief based on the equitable doctrines of judicial estoppel and unclean hands.  Rederford v. US Airways, Inc., 586 F. Supp. 2d 47, 51-54 (D.R.I. 2008).  Rederford, who had worked for US Airways for approximately twenty-four years as a Customer Service Representative and suffered from Systemic Lupus Erythematosus ("lupus"), claimed that US Airways' January 31, 2002, termination of her employment violated her rights under the ADA. The issues, involving the interplay between the Bankruptcy Code's definition of "claims" and causes asserted under federal employment discrimination law, are novel for us.  We affirm the dismissal.

I.

Because Rederford's claim was dismissed under Fed. R. Civ. P. 12(b)(6), we accept the well-pleaded facts in her complaint as true, drawing all reasonable inferences in her favor.  Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009). Rederford's claims raise pure questions of law.  The underlying facts are not disputed.

-2-

Throughout most of Rederford's twenty-four-year employment as a Customer Service Representative at US Airways she suffered from lupus, which was diagnosed in 1979. Lupus is an inflammatory connective tissue disease with variable and often disabling features. During the month before the termination of her employment, Rederford was absent from work from January 2 to January 5, 2002, due to a lupus-related illness. Rederford's supervisor required that she submit a certification from a health care provider regarding her medical condition. The supervisor was not satisfied with the initial certification and requested an amended one by January 26. After the supervisor did not receive the amended certification by the extended deadline of January 28, US Airways terminated Rederford's employment on January 31, 2002, at T.F. Green Airport in Warwick, Rhode Island.[1]

On April 25, 2002, Rederford filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was also cross-filed with the Rhode Island Human Rights Commission ("RIHRC"). On May 10, 2002, she also filed a charge of discrimination against US Airways with the RIHRC.

In the meantime, US Airways was itself suffering financial difficulties. On August 11, 2002, US Airways filed a Voluntary Petition for Relief under Chapter 11 in the Bankruptcy

---

[1] Rederford asserts that the loss of her job forced her to file for bankruptcy.

Court for the Eastern District of Virginia. Around October 1, 2002, Rederford was notified of the bankruptcy proceeding and was provided a proof of claim form. The notice informed Rederford that if she did not submit a proof of claim by the November 4, 2002 bar date she would be "forever barred, estopped and enjoined from" asserting her claims against US Airways.

Rederford returned her proof of claim form on October 31, 2002. In it, Rederford stated her belief that she had been discriminated against on the basis of disability and been denied reasonable accommodation. She estimated her claim to be valued at one million dollars, including punitive damages.

On January 24, 2003, US Airways filed its Second Omnibus Objection to a number of different classes of claims, including "contingent and unliquidated claims for which [US Airways] den[ied] any liability." Rederford's discrimination claim was listed within this class.

US Airways' Objection also contained language stating that "to the extent any such litigation claims are completely covered by any of the Debtors' applicable insurance policies as described in paragraph 4 above, the Debtors object to such claimants receiving any distribution under the Plan since such claimants will recover the full amount of their claims, if they are so entitled, from available insurance proceeds." Paragraph four of the Objection described US Airways' insurance policies as covering

-4-

"personal injury tort claims" and stated that nearly all of them provide "first dollar" coverage, meaning that US Airways would not have to pay a deductible. It also stated that, under an "Insurance Stipulation Order," US Airways could grant relief from the automatic stay of claims to "personal injury tort claimants" who, "subject to certain notice and filing procedures," released and waived claims against US Airways and agreed to limit recovery to insurance proceeds.

Rederford was served notice of the Objection on January 28, 2003, and was informed that her claim would be disallowed unless she filed a request for a hearing by February 28, 2003. She did not file such a request. Rederford alleged at oral argument that she did not believe she needed to file the request, because she thought her claims were covered by US Airways' insurance policies. On March 17, 2003, the bankruptcy court entered an order sustaining the Objection, thereby disallowing Rederford's claim.

The following day, the bankruptcy court issued an order confirming US Airways' reorganization plan. This order discharged all claims arising before the plan's effective date, March 31, 2003, and permanently enjoined suit pursuant to those claims. This injunction applied to any claims Rederford had against US Airways, whether or not she had filed a proof of claim.

Over a year later, and two years after Rederford filed her initial complaint with the RIHRC, the RIHRC, on May 7, 2004,

issued a Complaint and Notice of Hearing regarding Rederford's charges of employment discrimination. On July 29, 2004, the RIHRC found that there was probable cause to believe that US Airways had discriminated against Rederford. US Airways subsequently filed a motion to dismiss with the RIHRC, asserting that Rederford's claims had been discharged in bankruptcy.[2] The RIHRC conditionally granted US Airways' motion to dismiss. Rederford then filed a late appeal to the State of Rhode Island Superior Court, which was dismissed as untimely.[3]

On May 1, 2008, after the EEOC had earlier issued a Notice-of-Right to Sue, Rederford filed a federal complaint alleging her January 31, 2002 termination violated Title I of the ADA, 42 U.S.C. §§ 12111-12117, and seeking reinstatement,

---

[2]    Rederford responded with similar arguments to those raised here, asserting that because her complaint sought the equitable remedy of reinstatement, it did not involve a claim for payment and thus was not a dischargeable "claim" within the meaning of the Bankruptcy Code. She also argued that US Airways was estopped from raising the bankruptcy discharge because it had taken a contrary position regarding her claim before the bankruptcy court and because of the doctrine of unclean hands.
    The RIHRC found that Rederford's estoppel arguments could have been raised before the bankruptcy court and so were barred by res judicata. The RIHRC further concluded that it did not have jurisdiction to consider whether equitable relief is properly considered a claim within the meaning of the Bankruptcy Code. It ordered Rederford to commence litigation on that question at the bankruptcy court within thirty days and informed her that if she failed to do so, the dismissal of her complaint would become unconditional.

[3]    US Airways has raised no issues under either Rooker-Feldman or preclusion doctrine based on the state court dismissal, nor has it argued that res judicata bars this suit.

-6-

compensatory, special, and punitive damages, and attorney's fees. Specifically, the complaint alleged that US Airways failed to grant Rederford reasonable accommodation for her disability, made prohibited inquiries--which where not job-related or consistent with business necessity--regarding the nature and severity of Rederford's disability, failed to interact in good faith with Rederford to reach a reasonable accommodation instead of terminating her employment, and engaged in acts of retaliation and coercion.

In early July 2008, US Airways filed a motion to dismiss, asserting that Rederford's suit was barred by the bankruptcy court's permanent injunction. The district court granted the motion in November 2008. Rederford, 586 F. Supp. 2d at 49. The court first concluded that Rederford's claim, even if it sought the equitable relief of reinstatement, was barred by the bankruptcy court injunction because it was a claim reducible to a payment. Id. at 52-53. The court then rejected Rederford's argument that US Airways was judicially estopped from invoking the bankruptcy court's injunction, finding that US Airways had not taken any positions in the bankruptcy court that contradicted its positions in this litigation. Id. at 53-54. Finally, the court found that Rederford's attempt to use the doctrine of unclean hands failed because US Airways had not engaged in misconduct. Id. at 54. This appeal followed.

II.

We review an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) de novo. Sutliffe, 584 F.3d at 325. In doing so, we accept the well-pleaded facts as true, viewing factual allegations in the light most favorable to the plaintiff. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Sutliffe, 584 F.3d at 325. We may consider not only the complaint but also "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). Rederford pursues pure issues of law, which require interpretation of provisions of the Bankruptcy Code.

We note at the outset that the ADA claims Rederford raises in this case were disallowed by the bankruptcy court and that her appeal to this court amounts to a collateral attack on the bankruptcy court's order. Nonetheless, US Airways has not defended on these grounds, perhaps because it wants to resolve the larger statutory interpretation issues that the claims raise.

A.      Whether Rederford's ADA Cause of Action is a "Claim" for Purposes of the Discharge Provisions of the Bankruptcy Code

Rederford concedes that, to the extent her initial claims would obligate US Airways to pay money damages, they are barred by the bankruptcy court's injunction in the Confirmation Order. She argues instead that because she could seek relief in the form of reinstatement should she prevail in her ADA claims, this equitable remedy removes her reinstatement claim from the definition of "claims" under the Bankruptcy Code.[4] At the very least, she argues, her suit may not be dismissed unless she fails to establish liability or unless she fails to obtain reinstatement if she establishes liability.

Section 101(5) of the Bankruptcy Code defines the term "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy

---

[4] Rederford also asserts that she is entitled to monetary damages paid by US Airways' insurance company and that this does not constitute a "claim" to payment from the debtor under § 101(5)(A). The document Rederford relies on for this assertion directly contradicts it. See Iqbal, 129 S. Ct. at 1949; see also Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)(stating that courts need not accept "'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise"). Rederford alleges that the Second Omnibus Objection represented that insurance could cover her claim. Yet the language of the Objection clearly does not state that all claims objected to, much less employment discrimination claims, are covered by insurance, and expressly says that the relevant insurance policies cover "personal injury tort claims."

is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The definition of claim serves a number of purposes; we outline the two relevant ones here. It defines what interests must be asserted in the Bankruptcy Court, and it defines what is discharged by the proceeding.

In enacting this language, Congress gave the term "claim" the "broadest available definition." F.C.C. v. NextWave Pers. Commc'ns, 537 U.S. 293, 302 (2003) (quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)) (internal quotation marks omitted).

Under § 101(5)(B), a right to an equitable remedy, whether or not fixed, disputed, or reduced to judgment, is a "claim" within the meaning of the Bankruptcy Code, and subject to bankruptcy proceedings, if "a monetary payment is an alternative for the equitable remedy." Air Line Pilots Ass'n v. Cont'l Airlines, 125 F.3d 120, 133 (3d Cir. 1997); Matter of Udell, 18 F.3d 403, 407 (7th Cir. 1994); see also Ohio v. Kovacs, 469 U.S. 274, 283 (1985); In re the Ground Round, Inc., 482 F.3d 15, 19-20 (1st Cir. 2007). The inclusion of equitable remedies that may be reduced to payment, similar to the inclusion of contingent claims in § 101(5)(A), ensures that even the most "uncertain and difficult to estimate" claims can be adjudicated in the bankruptcy proceedings. See Colonial Sur. Co. v. Weizman, 564 F.3d 526, 529 (1st Cir. 2009). This serves several obvious purposes that underlie the Bankruptcy Code and Chapter 11 reorganization.

-10-

One purpose is to avoid distinctions among creditors depending on whether the right to payment stems from an equitable source, a legal source, or an equitable remedy that can be reduced to payment. See Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363-64 (2006); 1 Alan N. Resnick et al., Collier on Bankruptcy ¶ 1.01[1], at 1-4 (16th ed. 2009). Thus, the Code evenhandedly grants access to the bankruptcy court for creditors to assert claims against a debtor based on both law and equity.

It also treats creditors evenhandedly as to the distribution of assets of the estate. This evenhanded treatment makes sense: in the end, whether the source is law or an equitable remedy that can be reduced to payment, it is the payment that the bankruptcy court will adjust, disallow, or discharge. Allowing claims for equitable relief that could be reduced to payment to be raised after the discharge from bankruptcy would defeat the goal of evenhanded treatment by essentially granting creditors raising such claims what amounts to priority over all other creditors.

Another purpose, especially in Chapter 11 proceedings, is to provide finality at the end of the bankruptcy proceeding for the debtor. Chapter 11 reorganization provides debtors with a fresh start by adjudicating, disallowing, or discharging all claims arising before the debtor is discharged from bankruptcy. See Katz, 546 U.S. at 363-64; Mason v. Official Comm. of Unsecured Creditors, 330 F.3d 36, 41 (1st Cir. 2003); 1 Alan N. Resnick et al., supra,

¶ 1.01[1], at 1-4. If equitable claims that are reduceable to payment arising before the debtor's discharge from bankruptcy could be raised later, debtors would be less certain about the effect of their bankruptcy discharge and this would hamper their efforts to reorganize into profitable businesses.

When the equitable relief sought cannot give rise to a payment, but requires non-monetary action by a debtor, different considerations come into play. If no monetary alternative exists for an equitable remedy, the bankruptcy court will not be able to liquidate it and so cannot readily prioritize it relative to other claims. See, e.g., In re Ben Franklin Hotel Assoc., 186 F.3d 301, 306-07 (3d Cir. 1999) (finding a right to enforcement of a partnership interest in a "unique business opportunity" to not be a claim within the meaning of the code because no monetary alternative existed); In re Udell, 18 F.3d at 409 (holding that enforcement of a covenant not to compete was not a claim).

Further, if the equitable remedy involves the abatement of ongoing conduct that is causing harm, rather than the remediation of past harms, the remedy is not a "repackaged claim for damages" and does not threaten the finality of the proceedings. See, e.g., In re Torwico Elec., Inc., 8 F.3d 146, 150 (3d Cir. 1993) (finding an order to abate ongoing pollution not to be a claim within the code).

Title I of the ADA explicitly provides for the same remedies available for employment discrimination suits in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117. In that context, front pay is an alternative remedy to reinstatement. Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001) ("[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."). Within our circuit, we have held that money damages are a disfavored, yet nonetheless alternative, remedy to reinstatement in employment discrimination cases, including those under the ADA. Arrieta-Colon v. Walmart P.R., Inc., 434 F.3d 75, 91 (1st Cir. 2006) (ADA employment discrimination case); Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 379-80 (1st Cir. 2004) (Civil Rights Act employment discrimination case).

We have not been cited any circuit case directly on point, but have been cited to an analogous case. The Third Circuit faced a similar question, balancing the policy interests of labor and bankruptcy law, in Air Line Pilots Association. 125 F.3d at 131-36. The court held that a right to seniority integration for airline pilots in the event of a merger, pursuant to a collective bargaining agreement, was a "claim" within the meaning of the Bankruptcy Code and thus within the bankruptcy court's jurisdiction. Id. at 136. Comparing a right to reinstatement to a particular level of seniority to a right to reinstatement

-13-

following wrongful employment termination, the court concluded that seniority integration was a contractual provision, intended to confer a benefit on a group of people, and that breach of the provision would result in "liquidated damages." Id. at 134-36. For this reason, the court found it was a "claim" within the meaning of the Code. Id.

Because money damages are an alternative remedy for reinstatement following wrongful termination, Rederford's claim was within the jurisdiction of the bankruptcy court and so disallowed and discharged. Rederford cannot preserve her right to reinstatement by limiting her recovery to equitable relief. Allowing her to do so would grant her the equivalent of a preference over other creditors, who only had claims for monetary damages or who agreed to accept liquidated damages for their equitable claims, by allowing her to avoid the prioritization of claims established in the bankruptcy proceeding. It would also thwart the finality of that proceeding and US Airways' reorganization plan by enabling her to pursue a suit arising before the discharge from bankruptcy.

Rederford had proper notice of her opportunity to pursue her employment discrimination claims through the bankruptcy proceeding. Having failed to do so, her claims are disallowed and discharged, and the injunction is effective to bar her claims.

B.    Remaining Arguments

-14-

The district court did not err in rejecting Rederford's contention that she nonetheless should be able to litigate her claims based on the doctrines of judicial estoppel and unclean hands.

We will assume dubitante that these two doctrines can be applied to seek relief from a discharge in bankruptcy, and also dubitante that they can be raised after the bar date. But the premises of the two doctrines are simply not met here. "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 26 (1st Cir. 2006) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). The doctrine's purpose is "to protect the integrity of the judicial process." New Hampshire, 532 U.S. at 749.

Rederford argues that US Airways has adopted inconsistent positions regarding the availability of insurance to cover her claim. She asserts that in the Second Omnibus Objection in the bankruptcy court, US Airways said, or at least that Rederford understood US Airways to have said, that her claim would be covered by the airline's insurance. This, Rederford alleges, led her not to file a request for a new hearing, allowing US Airways to prevail and her claim to be disallowed.

Her real claim is that she was misled by statements in the Objection.  The question here is not whether a party to the proceeding relied on the position, but rather whether the court did so in reaching its decision.  Cf. New Hampshire, 532 U.S. at 749; Fleet Nat'l Bank v. Gray, 375 F.3d 51, 60 (1st Cir. 2004) (rejecting a judicial estoppel claim because "[a]t no time did the bankruptcy court accept the legal or factual assertions of the complaint").  Here, the bankruptcy court sustained the Objection based on US Airways' contention that it had no liability for the claims--a contention that was not opposed by plaintiff--and also that the subset of those claims covered by insurance, personal injury tort claims, were not entitled to a distribution from the reorganization plan.  That ends the argument.

Unclean hands is a doctrine requiring that parties seeking equitable relief be honest and fair with the court.  Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995).  We review a district court's finding of unclean hands for abuse of discretion.  Dr. José S. Belaval, Inc. v. Pérez-Perdomo, 488 F.3d 11, 15 (1st Cir. 2007).  The doctrine of unclean hands "only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties [, i.e.] . . . 'affect[s] the equitable relations between the parties in respect of something brought before the court for adjudication.'"  Texaco P.R., Inc., 60 F.3d at 80 (quoting Keystone Driller Co. v. Gen.

-16-

Excavator Co., 290 U.S. 240, 245 (1933)).  Here, there was no misconduct.  US Airways' statements about insurance were not inaccurate or misleading.

The district court's order granting dismissal is affirmed.