UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Jennean Mason and Estate
of David C. Mason

    v.                                      Civil No. 14-cv-77-JL
                                                Opinion No. 2014 DNH 136
Wells Fargo Bank, N.A.


**MEMORANDUM ORDER**

In recent years, this court has seen an influx of cases in which defaulted mortgagors assert various theories of relief in an attempt to stave off foreclosure. This action to enjoin a foreclosure presents a variation on that theme. The plaintiffs, Jennean Mason and the estate of her late husband, allege that the defendant, Wells Fargo Bank, N.A., is attempting to foreclose on a mortgage on their property even though it "has not produced" the promissory note which that mortgage secures. The plaintiffs further assert that foreclosure would deprive Mason of her homestead right, in violation of N.H. Rev. Stat. Ann. § 480:1, and argue that Wells should be estopped from foreclosing because it promised them "that they could engage in loss mitigation to avoid foreclosure." This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity), because Mason and the estate are New Hampshire citizens, Wells is a citizen of South Dakota, and the amount in controversy exceeds $75,000.

Wells has moved to dismiss the complaint in part,[1] see Fed. R. Civ. P. 12(b)(6), arguing that Mason has no homestead right in the property, that the allegations that it does not hold the Note are too speculative to state a claim to relief, and that the plaintiffs cannot premise a claim to enjoin foreclosure upon Wells' alleged promise.  After careful consideration, the court grants the motion for precisely those reasons.

## I.  Applicable legal standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege facts sufficient to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  With the facts so

---

[1]Wells has not moved to dismiss the plaintiffs' claims for fraudulent and negligent misrepresentation, so the court does not address those claims here.

construed, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). The following background summary adopts that approach.

## II. **Background**

On March 17, 2006, David Mason and Jennean Oehme executed a warranty deed conveying property they jointly owned in Windham, New Hampshire to Mason alone. Later that day, Mason executed a promissory note in the amount of $288,750, payable to World Savings Bank, FSB. The note was secured by a mortgage, also in World Savings Bank's favor, on the Windham property. In executing the mortgage, Mason agreed to "waive all rights and benefits of homestead exemption in the Property." Mortg. (document no. 4-2) ¶ 34. The warranty deed and mortgage were recorded together in the Rockingham County Registry of Deeds a week later. After Mason had executed the mortgage, on March 17, 2006, he also executed a second warranty deed conveying the property back to Oehme and himself, as tenants in common; that deed was also recorded in Registry of Deeds, albeit roughly a month after the first.

Mason and Oehme later married, and she took his last name. Mr. Mason passed away in 2012, and Mrs. Mason continued to reside at the Windham property and to make payments on the mortgage. In May 2013, however, she became unemployed and was unable to make further payments. She immediately contacted Wells--which, the

complaint alleges, "claims to be the successor by merger to Wachovia Mortgage, FSB, which was formerly known as World Savings Bank, FSB"--to "inquire about loss mitigation options."  Wells allegedly promised the plaintiffs "that they could engage in loss mitigation to avoid foreclosure," and "started the process of working on an unemployment modification."  Although Wells made numerous requests of Mrs. Mason in connection with this process, and at one point informed Mrs. Mason that she "had successfully completed the unemployment modification process," the parties' "loss mitigation" efforts ultimately went nowhere.

Despite Mrs. Mason's repeated entreaties to various Wells representatives, Wells scheduled a foreclosure sale for January 2014.  That prompted the plaintiffs to file the present action in Rockingham County Superior Court, which granted the plaintiffs' motion to preliminarily enjoin the foreclosure.  Wells then removed the action to this court, see 28 U.S.C. § 1441, and filed the motion at bar.  In accordance with the Superior Court's injunction, which remains in effect following removal, see id. § 1450, no foreclosure sale has taken place.

## III.  Analysis

As mentioned at the outset, Wells moves to dismiss three of the plaintiffs' five claims:  (1) a claim that foreclosure would wrongfully deprive Mrs. Mason of her homestead right in the subject property; (2) a claim for wrongful foreclosure premised

on the allegation that Wells has not produced the note; and (3) a claim for promissory estoppel premised on Wells' alleged promise that the plaintiffs "could engage in loss mitigation to avoid foreclosure." The court addresses these claims in turn, and concludes that none has merit.

## A. Denial of homestead right

Under N.H. Rev. Stat. Ann. § 480:1, "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." This homestead right "is exempt from attachment during its continuance from levy or sale on execution, and from liability to be encumbered or taken for the payment of debts." N.H. Rev. Stat. Ann. § 480:4. In arguing that Wells may not foreclose because to do so would deny Mrs. Mason her homestead right in the subject property, the plaintiffs rely upon this exemption. The exemption, however, is not absolute; as Wells points out, under N.H. Rev. Stat. Ann. § 480:4, III, "mortgages which are made a charge thereon according to law" are not subject to it. That provision is fatal to the plaintiffs' claim, because, as noted in Part II, supra, the mortgage contains an explicit waiver of the homestead right.

In an effort to overcome section 480:4, III, the plaintiffs cite venerable case law for the proposition that a husband cannot waive his wife's homestead interest by executing a mortgage to which she is not also a party. See Smith v. Hall, 67 N.H. 200

(1892); Norris v. Moulton, 34 N.H. 392 (1857).  That rule has been codified in N.H. Rev. Stat. Ann. § 480:5-a, which provides that "[n]o deed shall convey or encumber the homestead right . . . unless it is executed by the owner and wife or husband, if any, with the formalities required for the conveyance of land." The plaintiffs contend that this principle bars Wells from foreclosing because Mrs. Mason did not herself execute the mortgage and associated promissory note.  The fundamental problem with this argument is that, as the New Hampshire Supreme Court recently explained, a wife cannot invoke § 480:5-a to exempt her homestead right from her husband's mortgage when "the mortgage deed was executed before the [wife] acquired her homestead right in the property."  Walbridge v. Estate of Beaudoin, 163 N.H. 804, 806 (2012).

That happened here.  Although Mrs. Mason had an ownership interest in the property at one time prior to the execution of the mortgage (when she was not yet married, and still known by her maiden name), she later conveyed that interest to Mr. Mason by way of warranty deed.  It was only after this conveyance had occurred that Mr. Mason mortgaged the property.[2]  Mrs. Mason's

---

[2]Although they gloss over this fact in their opposition to Wells' motion to dismiss, the plaintiffs concede in their motion to certify certain questions to the New Hampshire Supreme Court that Mrs. Mason deeded her property interest to her late husband before he executed the mortgage, and that she did not reacquire an interest in the property until after he had done so.  See Memo. in Supp. of Mot. to Certify (document no. 8-1) at 2.

conveyance to her husband extinguished any homestead right she may have had in the property, because ownership is "essential to the assertion of" a homestead right.[3]  Beland v. Goss, 68 N.H. 257 (1895).  Although Mrs. Mason later reacquired an interest in the property by way of a second warranty deed from Mr. Mason, he had already executed the mortgage by that time, so she took the property subject to it.  See Cadle Co. v. Bourgeois, 149 N.H. 410, 417 (2003) (a mortgage survives the transfer of property).  Under Walbridge, she cannot invoke her homestead right as a defense to enforcement of the mortgage.  Her claim for denial of the homestead right is accordingly dismissed.

## B.   Wrongful foreclosure

The plaintiffs' claim for wrongful foreclosure is premised on the theory that, "[i]n New Hampshire, the burden is on the foreclosing party to prove that it has the authority to enforce

---

[3]The plaintiffs resist this conclusion.  They assert that even after conveying ownership to Mr. Mason, Mrs. Mason continued to occupy the property, and argue that, for her homestead right in the property to be extinguished, she needed to both convey ownership of the property and cease occupying it.  The plaintiffs misapprehend New Hampshire law.  Both ownership and occupancy are necessary for invocation of the homestead right; neither one is, by itself, sufficient.  See, e.g., Walbridge, 163 N.H. at 805 (homestead right not created by ownership of property and intent to occupy it in the future; only ownership together with actual occupation will suffice).  That ownership is as equally (if not more) essential to the maintenance of a homestead right as occupancy is obvious from the nature of the right itself: because property that one does not own is not subject to attachment, it would make no sense to exempt that property from attachment for a non-owner's debts.

the Note." Compl. ¶ 46.  The plaintiffs allege that Wells "has not produced the original Note for inspection," and assert that "until it does, it cannot show that it has the power and authority to foreclose." Id.; see also id. ¶ 40.  Wells does not challenge the proposition that, in order to foreclose on a mortgage, the party must hold the note which that mortgage secures, so the court assumes, without deciding, that New Hampshire law requires possession of the note.  The court will also assume that a claim for wrongful foreclosure can lie where the foreclosure sale has yet to take place.  But cf. Worrall v. Fed. Nat'l Mortg. Ass'n, 2013 DNH 158, at 8 ("[A] necessary element of a wrongful foreclosure claim . . . is that a foreclosure sale must have occurred.").  Even indulging those assumptions, the plaintiffs have not stated a plausible entitlement to relief.

As Wells correctly argues, a plaintiff cannot mount a challenge to a defendant's authority to foreclose "simply by raising the possibility that the defendant lack[s] possession of the note secured by the mortgage they have tried to foreclose," because the pleading standard set forth in Federal Rule of Civil Procedure 8(a) requires "more than a sheer possibility that a defendant has acted unlawfully." Pro Mod Realty, LLC v. U.S. Bank Nat'l Ass'n, 2014 DNH 069, at 10 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Worrall, 2013 DNH 158, at 7,

12 (dismissing wrongful foreclosure claim premised on allegation that defendant had "not shown that it holds the original Note"; "speculation is insufficient to cast doubt on [defendant's] authority to enforce the note"). Rather, to successfully state a claim challenging a defendant's standing to foreclose (assuming, again, that possession of the note is a necessary prerequisite to foreclosure), a plaintiff must affirmatively allege--after "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), and under threat of sanction for misrepresentation, see id. 11(c)--that the defendant lacks possession of the note. Pro Mod Realty, 2014 DNH 069, at 10.

The plaintiffs have not done so. Their lukewarm allegation that Wells "has not produced the original Note" does not fit the bill. See Worrall, 2013 DNH 158, at 7. It does not follow from Wells' alleged non-production of the note that the note is not in Wells' possession. So the plaintiffs have failed to raise more than "a sheer possibility" that Wells does not possess the note.[4] Because the plaintiffs have not plausibly alleged that Wells lacks possession of the promissory note associated with the

---

[4]As the defendants have also noted, the complaint expressly alleges that Wells Fargo "claims to be the successor by merger to" World Savings Bank, the original holder of the note. The plaintiffs do not question that claim in either their complaint or their memorandum in opposition to Wells Fargo's motion. In light of this allegation, it is implausible to infer that Wells Fargo is not, in fact, the present holder of the note.

mortgage on which it is attempting to foreclose, their claim for wrongful foreclosure is dismissed.

## C. Promissory estoppel

Under the New Hampshire doctrine of promissory estoppel, "a promise reasonably understood as intended to induce action is enforceable by one who relies on it to his detriment or to the benefit of the promisor." Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 738 (1988) (citing Restatement (Second) of Contracts § 90 (1981)). Promissory estoppel thus protects only "reasonable reliance" on the part of the promisor. Marbucco Corp. v. City of Manchester, 137 N.H. 629, 633 (1993); see also Rockwood v. SKF USA Inc., 758 F. Supp. 2d 44, 57 (D.N.H. 2010), aff'd, 687 F.3d 1 (1st Cir. 2012). In support of their promissory estoppel claim, the plaintiffs allege that Wells promised that they "could engage in loss mitigation to avoid foreclosure." They further allege that Wells instructed Mrs. Mason to apply for an unemployment modification, and later told her that she needed to assume the loan in order to qualify for a modification. They assert that despite these communications, Wells referred the mortgage to foreclosure.

As Wells points out, notably absent from these allegations is any hint that Wells promised the plaintiffs that its loss mitigation options would successfully stave off foreclosure. To the contrary, Wells' representations to Mrs. Mason that she would

need to apply for a modification suggest that success in avoiding foreclosure was not guaranteed. The plaintiffs' expectation that engaging in loss mitigation would prevent foreclosure, then, was unreasonable, as were any actions they took in reliance upon that expectation. See Worrall, 2013 DNH 158, at 17 (the defendant's statement that the plaintiffs "could engage in loss mitigation to avoid foreclosure, if it were construed to be a promise, did not promise that the [plaintiffs'] efforts toward loss mitigation would be successful in avoiding foreclosure," so the plaintiffs "could not reasonably expect [the mortgagee] not to foreclose" based upon that alleged promise); cf. Pro Mod Realty, 2014 DNH 069, at 4 ("a promise to 'consider' taking a specified course of action in response to the promisee's request does not commit the promisor to that course of action, nor justify any expectation that the promisor will, in fact, take that course of action").

Attempting to salvage their promissory estoppel claim, the plaintiffs point to allegations that Wells (1) at one point told Mrs. Mason that she had "successfully completed the unemployment modification process and that the loan was in good standing," and (2) at a later date, told her that "she was on a 'short-term' program." The "reasonable inference from those representations," the plaintiffs allege, is that Wells "would not foreclose."

The plaintiffs also allege, however, that the representative of Wells who allegedly told Mrs. Mason that she was on a "short-

term program" also told her, at the same time, that he "did not understand the notes" on the file and, furthermore, that he could not explain what a "short-term program" was. The plaintiffs could not have reasonably relied on that person's representation that Mrs. Mason "was on a 'short-term' program"--whatever that might be--as a promise that Wells would not foreclose. While Wells' alleged statements that Mrs. Mason "had successfully completed the unemployment modification process and that the loan was in good standing" may have provided a more substantial basis for the plaintiffs to believe that Wells would not proceed with a foreclosure, the complaint also alleges that, about two weeks after those statements, Wells disavowed them and told Mrs. Mason that the loan was still "under review for short-term assistance." The plaintiffs do not allege that, during this two-week period, they took any actions to their detriment in reliance upon the expectation that Wells would not foreclose on the mortgage. So, even if it would have been reasonable to infer from these various statements that Wells would not foreclose, the plaintiffs have not alleged any detrimental reliance and, therefore, not made out a claim for promissory estoppel. See Pro Mod Realty, 2014 DNH 069, at 7 (citing MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 497 (1st Cir. 2013)). That claim is dismissed.

## IV.  Conclusion

For the reasons set forth above, Wells Fargo's partial motion to dismiss[5] is GRANTED.  Because the issues presented by this motion did not involve any novel issues of New Hampshire law requiring interpretation by the New Hampshire Supreme Court, the plaintiffs' motion to certify questions to that court[6] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 17, 2014

cc:  Stephen T. Martin, Esq.
     Michael R. Stanley, Esq.

---

[5]Document no. 4.

[6]Document no. 8.